Nos. 2015-1914, -1919

# United States Court of Appeals
# For the Federal Circuit

ALTERA CORPORATION, XILINX, INC.,

*Plaintiffs-Appellants,*

v.

PAPST LICENSING GMBH & CO. KG,

*Defendant-Appellee.*

Appeals from the United States District Court
for the Northern District of California in
Case Nos. 5:14-cv-04794-LHK and 5:14-CV-04963-LHK, Judge Lucy H. Koh

## APPELLANTS' OPENING BRIEF

PATRICK T. MICHAEL
MATTHEW J. SILVEIRA
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 626-3939

*Attorneys for Plaintiff-Appellant Xilinx, Inc.*

CHAD S. CAMPBELL
DAN L. BAGATELL
JESSICA L. EVERETT-GARCIA
JONATHAN D. ALLRED
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012
(602) 351-8000

*Attorneys for Plaintiff-Appellant Altera Corporation*

## CERTIFICATE OF INTEREST FOR XILINX

Counsel for Plaintiff-Appellant <u>Xilinx, Inc.</u> certifies the following:

1.      The full name of every party represented by me is:

Xilinx, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

N/A

4.      The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are appearing in this Court are:

Jones Day (Patrick T. Michael, Matthew J. Silveira, Joe C. Liu)

Haynes and Boone (Glenn E. Westreich, Jason M. Gonder, Henry L. Welch)

Dated:      December 14, 2015          /s/ Matthew J. Silveira
                                       *Attorney for Plaintiff-Appellant*
                                       Xilinx, Inc.

## <u>CERTIFICATE OF INTEREST FOR ALTERA</u>

Counsel for Plaintiff-Appellant <u>Altera Corporation</u> certifies the following:

1.      The full name of every party represented by me is:

Altera Corporation

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

none currently, but Intel Corporation has agreed to acquire Altera Corporation in a transaction that is expected to close during the pendency of this appeal

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are appearing in this Court are:

> Morrison & Foerster LLP (Karl J. Kramer, Colette Reiner Mayer, Alessa Yin-Chen Phang, Adela Gotz, Jayson L. Cohen, Christopher F. Jeu, Joseph R. Palmore, Brian Matsui)

Perkins Coie LLP (Chad S. Campbell, Dan L. Bagatell, Jessica L. Everett-Garcia, Jonathan D. Allred)

Dated:        December 14, 2015        /s/ Chad S. Campbell
                                        *Attorney for Plaintiff-Appellant*
                                        Altera Corporation

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST FOR XILINX ........................................................ i

CERTIFICATE OF INTEREST FOR ALTERA ..................................................... ii

TABLE OF CONTENTS ..................................................................................... iv

TABLE OF AUTHORITIES ................................................................................ vi

TABLE OF ABBREVIATIONS AND CONVENTIONS ..................................... x

STATEMENT OF RELATED CASES ................................................................. xi

INTRODUCTION ................................................................................................ 1

JURISDICTIONAL STATEMENT ..................................................................... 3

STATEMENT OF ISSUES ................................................................................. 3

STATEMENT OF THE CASE ............................................................................. 4

    A.    Papst's Patent Enforcement Business and Its Historical Ties to California ...................................................................................... 4

    B.    The California Origins and Acquisition of the Patents at Issue ........... 6

    C.    Papst's Enforcement of the Patents-in-Suit in California .................. 8

    D.    The Declaratory Judgment Complaints ............................................ 11

    E.    The District Court's Dismissal Order ............................................... 12

    F.    This Appeal ...................................................................................... 13

SUMMARY OF ARGUMENT ........................................................................... 14

ARGUMENT ...................................................................................................... 15

I.    PAPST IS SUBJECT TO SPECIFIC JURISDICTION IN CALIFORNIA ................................................................................... 16

    A.    Papst Purposefully Directed Its Activities at California Residents. ....................................................................................... 17

    B.    Appellants' Declaratory Judgment Claims Arise Out of and Relate to Papst's Activities in California. ......................................... 20

    C.    The Assertion of Personal Jurisdiction Over Papst Is Reasonable and Fair. ...................................................................... 23

II.    THE DISTRICT COURT ERRED IN RULING THAT IT LACKED
        SPECIFIC JURISDICTION OVER PAPST ...................................................28

        A.    Categorically Disqualifying Non-Exclusive Licensing as a
               Jurisdictional Contact Conflicts with Controlling Precedent.............28

        B.    It Is Unfair to Allow Foreign Patent Assertion Entities to Evade
               Jurisdiction in the Forums Where They Routinely Conduct
               Business...........................................................................................34

        C.    The District Court's Isolation of Individual Connections to
               California Was Erroneous. .............................................................37

III.   THE DISTRICT COURT ABUSED ITS DISCRETION BY RULING
        THAT IT LACKED GENERAL JURISDICTION WITHOUT
        ALLOWING DISCOVERY ON THAT TOPIC.........................................42

CONCLUSION ........................................................................................................47

ADDENDUM:  DISTRICT COURT DECISION

DECLARATION OF AUTHORITY

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

CASES

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
  846 F.2d 731 (Fed. Cir. 1988), *overruled on other grounds by
  MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ...............................21

*Autogenomics, Inc. v. Oxford Gene Technology Ltd.*,
  566 F.3d 1012 (Fed. Cir. 2009) ...................................................30, 36

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
  552 F.3d 1324 (Fed. Cir. 2008) ........................................20, 29, 30, 40

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994) .......................................................28, 37

*Breckenridge Pharm., Inc. v. Metabolic Labs., Inc.*,
  444 F.3d 1356 (Fed. Cir. 2006) ....................................................26, 30

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).................................................................passim

*Campbell Pet Co. v. Miale*,
  542 F.3d 879 (Fed. Cir. 2008) ......................................................24, 25

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014)...............................................................passim

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
  557 F.2d 1280 (9th Cir. 1977) .........................................................42

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*,
  297 F.3d 1343 (Fed. Cir. 2002) ................................................34, 36, 44

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)....................................................................33

*Electronics for Imaging, Inc. v. Coyle*,
  340 F.3d 1344 (Fed. Cir. 2003) ...................................................passim

*Genetic Implant Sys., Inc. v. Core-Vent Corp.*,
  123 F.3d 1455 (Fed. Cir. 1997) ............................................22, 25, 41

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011)..........................................................37, 39, 43

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,
  824 F.2d 953 (Fed. Cir. 1987) ......................................................26

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ......................................................45

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)....................................................................16

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010)......................................................................36

*Hewlett-Packard Co. v. Acceleron LLC*,
  587 F.3d 1358 (Fed. Cir. 2009) ............................................21, 22, 32

*Hildebrand v. Steck Mfg. Co.*,
  279 F.3d 1351 (Fed. Cir. 2002) ....................................................30

*In re Papst Licensing GmbH & Co. KG Litig.*,
  273 F.R.D. 339 (D.D.C. 2011) ................................................22, 31

*Inamed Corp. v. Kuzmak*,
  249 F.3d 1356 (Fed. Cir. 2001) ............................................20, 23, 26

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945)..............................................................passim

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984)................................................................21, 23

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012) ....................................................15

*Milliken v. Meyer*,
  311 U.S. 457 (1940)....................................................................17

*Mississippi Interstate Express, Inc. v. Transpo, Inc.*,
   681 F.2d 1003 (5th Cir. 1982) .....................................................31, 35

*PDK Labs, Inc. v. Friedlander*,
   103 F.3d 1105 (2d Cir. 1997) .................................................................34

*Perkins v. Benguet Consolidated Mining Co.*,
   342 U.S. 437 (1952).................................................................................45

*Quill Corp. v. North Dakota*,
   504 U.S. 298 (1992).................................................................................28

*Radio Sys. Corp. v. Accession, Inc.*,
   638 F.3d 785 (Fed. Cir. 2011) ....................................................17, 20, 23, 30

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
   148 F.3d 1355 (Fed. Cir. 1998) .................................................20, 41

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
   966 F. Supp. 833 (D. Minn. 1997).........................................................41

*Schneider v. Hardesty*,
   669 F.3d 693 (6th Cir. 2012) ...................................................................34

*Shaffer v. Heitner*,
   433 U.S. 186 (1977).................................................................................29

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
   135 S. Ct. 831 (2015)...............................................................................33

*Twentieth Century Fox Int'l Corp. v. Scriba*,
   385 F. App'x 651 (9th Cir. 2010) .......................................................42

*United States v. Mitchell*,
   271 U.S. 9 (1926).....................................................................................31

*Viam Corp. v. Iowa Exp.-Imp. Trading Co.*,
   84 F.3d 424 (Fed. Cir. 1996) .........................................................24, 25, 26, 27

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014).................................................................16, 21, 23

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980).........................................................................................17

**STATUTES**

28 U.S.C. § 1295(a)(1).................................................................................3

28 U.S.C. § 1331..........................................................................................3

28 U.S.C. § 1338(a).....................................................................................3

28 U.S.C. § 2201.......................................................................................... 3

35 U.S.C. § 293.....................................................................................35, 36

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 52 ...........................................................33

## <u>TABLE OF ABBREVIATIONS AND CONVENTIONS</u>

| | |
|---|---|
| Altera | Plaintiff-Appellant Altera Corporation |
| Papst | Defendant-Appellee Papst Licensing GmbH & Co. KG |
| Rambus | Rambus, Inc.—the original assignee and seller of the patents at issue |
| Xilinx | Plaintiff-Appellant Xilinx, Inc. |
| '891 patent | U.S. Patent No. 6,704,891—one of two patents-in-suit, originally assigned to Rambus |
| '759 patent | U.S. Patent No. 6,574,759—the other patent-in-suit, originally assigned to Rambus |

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, appellants state:

(a)     There have been no other appeals in these consolidated cases.

(b)     Altera and Xilinx filed the declaratory judgment actions underlying these consolidated appeals on October 28, 2014, and November 7, 2014, respectively.  Also on November 7, 2014, Papst filed an action against Xilinx in the District of Delaware alleging infringement of the patents-in-suit.  *Papst Licensing GmbH & Co. KG v. Xilinx, Inc.*, Civil Action No. 14-1376-LPS-CJB (D. Del.).  On February 17, 2015, Papst filed a nearly identical patent infringement action against Altera in the District of Delaware.  *Papst Licensing GmbH & Co. KG v. Altera Corp.*, Civil Action No. 15-162-LPS-CJB (D. Del.).  On September 1, 2015, the magistrate judge in the District of Delaware granted the motions of Xilinx and Altera to transfer Papst's infringement actions against them to the Northern District of California.  *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, No. CV 14-1375-LPS-CJB, 2015 WL 5138154 (D. Del. Sept. 1, 2015) (Burke, M.J.).  Papst's objection to the transfer order is pending before District Judge Stark.

## **INTRODUCTION**

Papst is a German patent assertion entity that has deliberately exploited California's intellectual property market for decades, having sued at least a dozen companies headquartered or operating in California for patent infringement in California courts and entering licensing agreements with many more.  This case arises out of one of Papst's recent forays into that market.

The patents-in-suit, which have their origins in California, claim methods related to testing integrated circuits.  When Papst began enforcing the patents via threats of litigation both in letters and during repeated visits to the headquarters of Xilinx and Altera in northern California, Xilinx and Altera sued in the Northern District of California for declaratory relief.  Those claims for relief arise from and relate to conduct that Papst purposefully directed at California residents. Moreover, Papst's conduct and California contacts go far beyond mere cease-and-desist letters.  Indeed, Papst acquired the patents from California-based Rambus under an assignment agreement that restricts how Papst may enforce the patents against a wide range of California technology companies and that contractually binds Rambus to offer litigation assistance only to Papst.  In view of those facts, it is reasonable and fair to subject Papst to specific personal jurisdiction in California.

The district court nonetheless concluded that it could not exercise specific jurisdiction over Papst.  In doing so, the district court read this Court's precedents as establishing a bright-line rule that patent licensing efforts could not provide a basis for specific jurisdiction over Papst in California—even though Papst's business is to assert patents and even though Papst has focused that business (both generally and in this case) on licensing activities in California.  In essence, the district court concluded that this Court draws a distinction between non-exclusive patent licensing activities and other types of patent enforcement, with only the latter supporting the exercise of personal jurisdiction in declaratory judgment cases.

That reasoning is flawed.  Supreme Court precedent does not permit such rigid line-drawing.  When, as here, a lawsuit arises from actions purposefully directed at a forum's residents, it is the defendant's burden to establish that it would be unreasonable to exercise jurisdiction notwithstanding all of the defendant's forum contacts.  The district court's narrow analytical framework also makes no legal or practical sense because it would permit foreign patent assertion entities to insulate themselves from suit in the forums in which they conduct their sole business activities, establishing a stark asymmetry between the rights of foreign patent holders and domestic operating companies.  This Court should

reverse the district court's ruling, clarify its jurisprudence, and direct the district court to exercise personal jurisdiction over Papst.

Although this appeal can and should be resolved on the basis of specific personal jurisdiction alone, the district court also abused its discretion by ruling that Papst is not subject to general personal jurisdiction in California without allowing discovery on that topic. Even without any general jurisdiction discovery, Xilinx and Altera presented evidence indicating that Papst predominantly enforces its patents against and derives revenues from companies headquartered or operating in California. In refusing to allow discovery on those topics, the district court misapplied the legal standard for establishing general jurisdiction and misunderstood the narrow scope of the voluntary discovery that Papst had provided. Thus, at a minimum, the Court should remand for additional discovery.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 2201, and entered final judgment on July 9, 2015. (Appx1-25.) Xilinx and Altera timely noticed these appeals (Appx1981-82; Appx914-15), and this Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF ISSUES

1.    Papst's sole business is to acquire and enforce patents. For over 20 years, Papst has aimed its business activities at California technology companies,

both by demanding royalties from those companies and by filing patent litigation in California courts. The declaratory judgment actions here arose when Papst asserted patents it acquired from California-based Rambus against Xilinx and Altera in California, not only by letter but also through in-person litigation threats delivered in San Jose at the respective headquarters of Xilinx and Altera. That conduct was an extension of Papst's decades-long history of enforcing patents by litigation and otherwise in California. Did the district court err by holding that it would be unfair to exercise specific personal jurisdiction over Papst?

2.      As the district court acknowledged, Papst did not allow Xilinx and Altera to discover the full extent of Papst's continuous and systematic contacts with California. Did the district court abuse its discretion by declining to exercise general personal jurisdiction over Papst without allowing discovery on that topic?

## STATEMENT OF THE CASE

### A.      Papst's Patent Enforcement Business and Its Historical Ties to California

Papst's entire business consists of acquiring and enforcing patents through licensing and litigation. (Appx114-15 ¶ 6; Appx502; Appx509; Appx179 ¶¶ 2-3.) Although headquartered and organized in Germany, Papst describes itself as a "global" firm "[a]ctive worldwide" in licensing patents, "[e]specially in the United States," where it has "years and years of experience in patent litigation." (Appx502; *accord* Appx179 ¶¶2-3.) In the last two decades, Papst has availed

itself of California courts to file patent infringement lawsuits against at least a dozen technology companies based or operating in California.[1]

Papst's business model is to obtain intellectual property rights and then "commercialize and license" them by "enforc[ing] infringed patents in its own name" with the assistance of its "extensive and professional network of litigation and patent attorneys." (Appx1720-21; Appx509.) If Papst is successful in enforcing the patents it acquires, it "shares any royalties with … the original patentee." (Appx518.) According to Papst, "patent licensing in itself is a full-time job." (Appx517.)

Papst claims "exceptional expertise in consumer goods and large-scale production goods, including electronics, telecommunications, IT and mechanical engineering." (Appx518; *see also* Appx510-11 ("We concluded more than 160 license agreements especially with IT and CE companies.").) That expertise

---

[1] *See Papst Licensing, GmbH v. Maxtor Corp.* (N.D. Cal. Case No. 99-cv-01319) (Appx1658-71; Appx1876-80); *Papst Licensing GmbH & Co. KG v. Cornice, Inc., SAE Magnetics Ltd. & TDK Corp.* (N.D. Cal. Case No. 05-cv-03880) (Appx1673-1681; Appx1881; Appx1883); *Papst Licensing GmbH & Co. KG v. Western Digital Corp., Seagate Tech. LLC, Veritas Software Tech. Corp., et al.* (C.D. Cal. Case No. 02-cv-00650) (Appx1683-92; Appx1714-17; Appx1886-89); *Papst Licensing GmbH & Co. KG v. Samsung Techwin Co. & Samsung Opto-Elecs. Am. Inc.* (C.D. Cal. Case No. 07-cv-04249) (Appx1694-99); *Papst Licensing GmbH v. Micropolis Corp.* (C.D. Cal. Case No. 94-cv-02538) (Appx1701-02; Appx1892); *Papst Licensing GmbH v. Micropolis Corp.* (C.D. Cal. Case No. 94-cv-00482) (Appx1704-05); *Papst Licensing GmbH v. Western Digital Corp.* (C.D. Cal. Case No. 94-cv-00378) (Appx1707-10).

routinely leads Papst to the high-tech regions of California. Of the four U.S.

licensees identified on Papst's website, three are headquartered in California

(Hewlett-Packard, Seagate, and Western Digital), and the fourth (IBM) has a

significant research center in San Jose, California (its Almaden Research Center).

(*See* Appx1722-23; Appx1712-17; Appx1735.) Of the other 20 licensees

identified on Papst's website, 19 have either U.S. headquarters or corporate offices

in California.[2]

As discussed below, Papst's acquisition and enforcement in California of the

patents at issue here carried out its business model exactly.

### B.     The California Origins and Acquisition of the Patents at Issue

The '891 and '759 patents-in-suit assert priority to the same original

application filed in 2000, share nearly the same written description and figures, and

claim methods for simulating and developing tests for integrated circuit memory

devices. (Appx50-58; Appx60-69.) The named inventors were all California

residents and employees of California-based Rambus, the original assignee.

---

[2] *See* Appx1722-23 (website); Appx1738 (Adda); Appx1739 (Alcatel); Appx1744 (BenQ); Appx1746 (Canon); Appx1747-51 (Compaq, since acquired by Hewlett-Packard); Appx1754 (Delta Electronics); Appx1757 (Hitachi); Appx1758 (JVC); Appx1788 (LG); Appx1759 (Lite-On); Appx1762 (Mitsubishi Electric); Appx1766 (NEC); Appx1767 (NIDEC); Appx1769-73 (Pentax, since acquired by Ricoh); Appx1774 (Samsung); Appx1776 (Sanyo); Appx1777 (Sanyo Denki); Appx1779-80 (Sony); Appx1784-85 (Toshiba).

(Appx50; Appx60.)  The patents were prosecuted by California-based attorneys retained by Rambus.  (Appx1805-17; Appx1819-20.)

Rambus first assigned the patents-in-suit to an intermediate entity that reassigned them to Papst one week later, in October 2012.  (Appx499-500.)  In buying the patents, Papst contracted to assume all the rights and obligations under the intermediary's original assignment and sale agreement with Rambus (the "Patent Purchase Agreement").  (Appx922.)  Consistent with Rambus's California domicile, the Patent Purchase Agreement is governed by California law and Santa Clara County, California provides the "sole and exclusive jurisdiction" for any dispute related to the agreement.  (Appx938-39 § 11.5.)

Under the Patent Purchase Agreement, Papst has an ongoing contractual relationship with Rambus that both limits and facilitates enforcement of the '891 and '759 patents.  First, Papst is contractually bound not to assert the patents against Rambus and 27 specified companies that Rambus had previously licensed.  (Appx950.)   Many of those 27 companies (*e.g.,* AMD, Broadcom, DIRECTV, Hewlett-Packard, Juniper Networks, and NVIDIA) are based in California.  (Appx2091-2100.)  Second, the agreement provides that Papst may request litigation and enforcement assistance from Rambus in the form of

> a technical opinion, engineering services or consulting
> services related to the Patents, expert testimony,
> execution of petitions, oaths, declarations or other papers
> and/or other assistance during prosecution, reexamination,

> reissue, interference, or other priority proceedings,
> infringement or other court actions and the like with
> respect to the Patents ….

(Appx936 § 8.)   Rambus is contractually bound "to only offer such Continued Assistance to" Papst, and Papst is obligated to reimburse Rambus for any expenses, costs, and fees incurred "in the event [Papst] needs or requests [Rambus's] assistance." (*Id.*)

After purchasing the '891 and '759 patents, Papst opted to continue using the California lawyers that Rambus had retained to serve as PTO counsel of record for ensuring that the patents remain in force.  (Appx1822; Appx1824; Appx1826.)

## C.    Papst's Enforcement of the Patents-in-Suit in California

Consistent with its business model, Papst evaluated potential enforcement targets before acquiring the patents-in-suit.  (Appx2102-23; Appx794:3-95:6; *see* Appx518 (explaining the company's practice of "identif[ying] the companies potentially involved in infringements, and the markets they are selling their product in—where they are located, and how large they are, including where the product is made as well as where it is sold").)  Of the 29 targets identified, 28, including Xilinx and Altera, are or were headquartered in California, have their

main U.S. offices in California, or otherwise have a significant presence in

California.[3]

After buying the patents, Papst first took aim at Altera and Xilinx, which the

Rambus Patent Purchase Agreement did not preclude them from pursuing. (*See*

Appx950.) Xilinx and Altera are competitors in the business of designing,

developing, and marketing programmable logic devices, which are found in

advanced electronics systems and have applications in a wide range of markets

including aerospace, wired and wireless communications, automotive, consumer

electronics, high performance computing, medical, and broadcasting. Both

companies were founded in Silicon Valley in the early 1980s, where they remain

---

[3] *See* Appx2026 (Achronix headquarters); Appx219 ¶ 2 (Altera
headquarters); Appx2027 (ARM main U.S. office); Appx2033 (Atmel
headquarters); Appx2035 (Avago co-headquarters); Appx2036 (Cadence main U.S.
office); Appx2038 (CSR corporate offices); Appx2039-40 (Ericsson corporate
offices); Appx2041 (Integrated Device Technology (IDT) headquarters);
Appx2042 (Kingston headquarters); Appx2044 (Lattice Semiconductor
development centers); Appx2047 (LSI headquarters); Appx2048 (Marvell U.S.
headquarters); Appx2050-51 (Mentor Graphics corporate offices); Appx2052
(Micron Technology corporate offices); Appx2054 (Microsemi headquarters);
Appx2056-57 (MIPS Technologies, now part of Imagination Technologies, with
U.S. headquarters in Santa Clara); Appx1766 (NEC corporate offices); Appx2060
(Qualcomm headquarters); Appx2068 (QuickLogic headquarters); Appx2073
(Semtech headquarters); Appx2075 (SK Hynix U.S. headquarters); Appx2077
(Spansion headquarters); Appx2082 (Synopsys headquarters); Appx2084 (Tabula
headquarters); Appx2086 (Texas Instruments corporate offices); Appx2089
(Winbond U.S. headquarters); Appx1797 ¶ 2 (Xilinx headquarters).

headquartered and the vast majority of their respective employees are located. (Appx1797 ¶¶ 2-3; Appx453 ¶ 2.)

Applying its standard, decades-old patent enforcement model, Papst had its litigation counsel notify Xilinx and Altera that Papst "believe[s] they are infringing" (Appx1733; Appx453 ¶ 4); then sent Papst executives and litigation counsel licensed in California "to visit the [purported] infringers" (Appx1733; Appx453-54 ¶ 7-8); and then sued them when negotiations failed (Appx1858-65; Appx676-83).  Going in, Papst was fully prepared to litigate as it had done repeatedly in the past—indeed, Papst touts that it has "been very successful with legal actions.  With our outside partners including attorneys, we have been very successful and won many high-profile patent cases."  (Appx1733.)

Papst first notified Xilinx and Altera of alleged infringement in nearly identical letters, each dated January 24, 2014.  (Appx1053-54; Appx99-100.) Papst claimed that various Xilinx and Altera products "infringe" the patents-in-suit and proposed discussions "so that Xilinx [and Altera] can consider taking a license."  (Appx1053; Appx99.)  Although the letters stated a preference to resolve the alleged infringement "outside the contours of litigation," Papst had the letters sent on litigation counsel's letterhead to Xilinx's and Altera's respective San Jose headquarters.  (Appx1054; Appx100.)  Papst's litigation counsel followed up with

a second set of letters on April 22, 2014, requesting a response within roughly
three weeks.  (Appx1056; Appx102.)

On July 17, 2014, Papst's managing director and California-licensed
litigation counsel traveled to San Jose, California to accuse Altera of infringing the
patents-in-suit.  (Appx219 ¶ 7; Appx788:2-23; Appx1871-72.)  On October 16,
2014, Papst returned to Altera's San Jose headquarters to repeat these allegations
and accuse Altera's customers of infringing the patents-in-suit.  (Appx220 ¶¶ 8-9.)
That same day, Papst visited Xilinx's San Jose headquarters to accuse Xilinx of
infringing the patents-in-suit and to demand that Xilinx pay for a license.
(Appx1797 ¶ 8.)  In the following months, Papst returned to northern California
twice more to enforce the patents against Xilinx and Altera.  (Appx1797-98 ¶ 9
(December 4, 2014 meeting with Xilinx in Palo Alto); Appx1802 ¶ 2 (February 24,
2015 meetings with Xilinx and Altera in San Jose).)

### D.    The Declaratory Judgment Complaints

After Papst traveled to northern California to enforce the patents-in-suit
against them, Altera and Xilinx filed declaratory judgment actions against Papst in
the Northern District of California.  Altera filed its declaratory action against Papst
on October 28, 2014.  (Appx42-48.)  Xilinx filed its declaratory action against
Papst on November 7, 2014.  Earlier on November 7, Papst filed actions in the
District of Delaware alleging infringement of the '891 and '759 patents by Xilinx

and another chip company, Lattice Semiconductor Corp. (Appx113-20; Appx104-11.) Three months later, Papst filed a third infringement action in Delaware accusing Altera of infringing the same patents. (Appx676-83.)

### E.   The District Court's Dismissal Order

Papst moved to dismiss Xilinx's and Altera's declaratory judgment complaints, arguing that it was not subject to personal jurisdiction in California. (Appx1028-1047; Appx71-90.) After Xilinx moved for leave to conduct jurisdictional discovery, Papst agreed to produce a corporate representative for deposition and associated non-privileged documents on a half-dozen narrow topics related to the patents-in-suit exclusively. (Appx1399-1401.) Xilinx agreed to withdraw its motion for discovery without prejudice to renewal after evaluating the adequacy of the discovery provided. (Appx1401.) When Xilinx and Altera opposed the motions to dismiss, they each explained that Papst had refused to produce information or answer deposition questions related to Papst's activities in California and asked the district court to order limited discovery directed to general jurisdiction if the court concluded that the record was insufficiently developed to exercise jurisdiction over Papst. (Appx2009 n.4; Appx775 n. 4.)

On July 9, 2015, the district court issued an order in both cases dismissing both complaints against Papst for lack of personal jurisdiction. (Appx2.) The court held that "even if Papst's business contacts [with California] are 'continuous

and systematic,'" those contacts did not "support the proposition that California

can be considered Papst's surrogate place of incorporation or temporary place of

business," and thus were "insufficient to subject it to the general jurisdiction of

California." (Appx9-10.) As for specific jurisdiction, the court found that Papst

"has many connections to the state of California," but evaluated each connection

individually and concluded that each "either related solely to Papst's attempts to

license the patents, which the Federal Circuit has held insufficient, or according to

Federal Circuit law are irrelevant to the parties' instant dispute." (Appx23.)

Finally, although the court did not mention Xilinx's request for discovery, the

court denied Altera's analogous request for "jurisdictional discovery into Papst's

prior enforcement activities in California," reasoning that Altera had been unable

to make a prima facie showing of jurisdiction over Papst on the basis of the limited

discovery that Papst had voluntarily provided. (Appx23-24.)

### F.     This Appeal

Altera filed its notice of appeal on August 7, 2015. (Appx914-15.) Xilinx

filed its notice of appeal that same day, limited to the portions of the order granting

Papst's motion to dismiss Xilinx's claims for declaratory judgment of

noninfringement and denying discovery. (Appx1982.)[4]

---

[4] Xilinx limited its appeal to the grant of Papst's motion to dismiss Xilinx's claims for declaratory judgment of noninfringement of the patents-in-suit, and has petitioned for *inter partes* review of those patents' validity.

## SUMMARY OF ARGUMENT

For decades, Papst has purposefully directed its patent acquisition and enforcement activities at California. The declaratory judgment claims here arise out of and relate to those activities, in particular Papst's enforcement of the patents-in-suit in California through threats of litigation. With "minimum contacts" easily established, specific personal jurisdiction over Papst turns on whether it is reasonable and fair for the district court to assert jurisdiction over Papst. Given Papst's extensive patent assertion activities in California and the close connection of the patents-in-suit with California, it is indeed reasonable and fair for the district court to exercise specific personal jurisdiction over Papst. Papst is thus subject to specific personal jurisdiction in California.

The district court's contrary conclusion was based on errors of law. The court applied a categorical rule that enforcing patents through litigation-backed licensing is an insufficient basis for specific jurisdiction in patent-related declaratory judgment actions regardless of the depth and extent of those activities. But there can be no such categorical rule, and such a rule would be unwise. Moreover, the district court's rule would insulate foreign patent-assertion entities from suit in the forums in which they routinely conduct their business, contrary to notions of fair play and substantial justice. The court also erred by isolating each of Papst's contacts with California and concluding that each one individually could

not support jurisdiction. A proper analysis considers the collective weight of those contacts, and under that framework this Court should hold that Papst is subject to specific personal jurisdiction in the Northern District of California and reverse the district court's dismissal of appellants' declaratory judgment claims.

In addition, the district court abused its discretion by declining to exercise general personal jurisdiction without allowing discovery on Papst's overall contacts with California. The court ignored the narrow scope of the discovery that Papst voluntarily provided and misapplied the legal standard for the exercise of general jurisdiction in concluding that further jurisdictional discovery would be futile. At a minimum, the Court should remand for jurisdictional discovery.

## ARGUMENT

Personal jurisdiction presents an issue of law that the Court reviews de novo, "without deference" to the district court's decision. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1292 (Fed. Cir. 2012). Federal Circuit law governs the jurisdictional issues presented in this case. *See Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003). Where, as here, "the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal

jurisdiction." *Id.* at 1349. Any factual conflicts in the evidence must be resolved in the plaintiff's favor. *Id.*

Because California's long-arm statute permits service of process to the limits of the Due Process Clause of the United States Constitution, "the personal jurisdiction analysis in this case narrows to one inquiry: whether jurisdiction comports with due process." *Id.* at 1350. Personal jurisdiction over a defendant can be either specific or general. A court may exercise specific personal jurisdiction over a defendant where "the defendant's suit-related conduct … create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014). Where the defendant's affiliations with a forum are "so constant and pervasive as to render [it] essentially at home in the forum State," the defendant is subject to general personal jurisdiction and a court may hear "any and all claims against it, wherever in the world the claims may arise." *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (quotation marks omitted).

## I.    PAPST IS SUBJECT TO SPECIFIC JURISDICTION IN CALIFORNIA

Specific personal jurisdiction applies where a plaintiff's claims are "related to or aris[e] out of a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). The defendant's contacts must be "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  This Court has fashioned a three-part test from these due process requirements:  the plaintiff must show that (1) "the defendant purposely directed its activities at residents of the forum," (2) "the plaintiff's claim arises from or relates to those activities," and (3) "the assertion of personal jurisdiction under the circumstances is reasonable and fair."  *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011).  Each element is satisfied here.

### A.    Papst Purposefully Directed Its Activities at California Residents.

The "purposeful direction" or "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see, e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (finding no purposeful availment of Oklahoma where plaintiff sought to base jurisdiction on "the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma").  Papst's contacts with California are anything but random, fortuitous, or attenuated.  They are deliberate and substantial.

Papst's business is enforcing patents, which it accomplishes through licensing and litigation.  Papst does not manufacture or sell anything.  (Appx179 ¶ 2.)  Instead, it acquires patents invented by others and uses its "extensive

professional network of litigation and patent attorneys" to enforce the patents and send royalties back to the original patentees. (Appx509, 518.) Papst has entered more than 160 licensing agreements, many with California companies, and has filed several patent infringement lawsuits in California. (*See* Appx510-11; *supra* note 1.) In fact, Papst's marketing materials indicate that it has primarily directed its enforcement activities at technology companies based in California or with significant operations there. (*See* Appx1722-23; Appx1712-17; Appx1735-36; *supra* note 2.)

The patents-in-suit are a prime example. Papst "acquired the '759 and '891 patents through their predecessor-in-interest, Rambus, Inc.," a company headquartered in Sunnyvale, California. (Appx1860 ¶ 7; Appx1793.) Although Papst acquired the patents through an intermediary, it assumed all of the intermediary's rights and obligations under the Patent Purchase Agreement with California-based Rambus, including: (1) a license of the patents-in-suit back to Rambus; (2) a covenant not to sue 27 companies, including many California companies, based on Rambus's agreements with those companies; and (3) an obligation to reimburse Rambus for "continued assistance" in connection with any "infringement or other court actions and the like with respect to the Patents," which assistance Rambus is contractually bound to offer only to Papst. (Appx936-37 § 8; *accord* Appx922; Appx931-32; Appx949-50; Appx2091-2100.)

Papst identified a target market of 29 enforcement candidates before buying the patents, including 28 that were headquartered in or otherwise had a significant presence in California. (*See supra* note 3.) Papst began enforcing the patents through a series of communications directed to Xilinx and Altera, both of which were headquartered in California. Papst's litigation counsel sent two letters to each company's California headquarters in January and April 2014 to notify them of the patents and threaten litigation if they refused to take a license. (Appx1053-54; Appx1056; Appx99-100; Appx102.) Beginning in July 2014, Papst and its litigation counsel traveled to California four separate times to accuse Xilinx and Altera of infringing the patents and to assert that Xilinx and Altera must obtain licenses. (Appx219-20 ¶¶ 7-9; Appx1797-98 ¶¶ 8-9; Appx1802 ¶ 2.) After the second trip, Papst sued Xilinx and another competitor, Lattice, for infringement of the patents-in-suit, giving teeth to its threats. (Appx113-20; Appx104-11.)[5]

In short, Papst has many substantial contacts with California. "[T]he totality of these contacts sufficiently make out [a] *prima facie* case that [Papst], by 'engag[ing] in significant activities' in California …, purposefully directed [its] activities to California," including by enforcing the patents-in-suit against Xilinx and Altera. *Electronics for Imaging*, 340 F.3d at 1351 (quoting *Burger King*, 471

---

[5] Papst delayed filing suit against Altera until nearly four months after Altera sued it in the Northern District of California.

U.S. at 475-76); *see also Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1362 (Fed. Cir. 2001) (finding that the "combination of Dr. Kuzmak's infringement letter and his negotiation efforts which culminated in four license agreements" established purposeful direction).

### B.     Appellants' Declaratory Judgment Claims Arise Out of and Relate to Papst's Activities in California.

A claim for declaratory judgment of noninfringement "relates to the 'wrongful restraint [by the patentee] on the free exploitation of non-infringing goods.'" *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)).  Communications "relating to the enforcement or defense of the patent ... 'clearly arise out of or are related to' a subsequent declaratory judgment action when they relate to the patent-in-suit." *Radio Sys.*, 638 F.3d at 791 (citation omitted); *see also Inamed*, 249 F.3d at 1362 ("There can be no dispute" that non-infringement claims arise "directly" out of a patentee's "act of sending an infringement letter.").  Appellants' declaratory relief claims easily satisfy this standard.

As a patent assertion entity, Papst had one purpose in acquiring the patents-in-suit:  to monetize those assets through licensing and litigation.   Indeed, before acquiring the patents-in-suit, Papst had its counsel obtain a list of enforcement targets, all but one of which were headquartered or operated in California.

(Appx2102-23; Appx794:3-95:6.)  By targeting Xilinx, Altera, and other California technology companies, Papst deliberately exploited the California market, giving rise to Xilinx's and Altera's claims for declaratory relief.  *See Walden*, 134 S. Ct. at 1122 (activities intended "to 'deliberately exploi[t]' a market in the forum State" are highly relevant to the specific personal jurisdiction analysis) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)).

Papst began to execute on its enforcement plan by having its litigation counsel send Xilinx and Altera letters that identified products allegedly infringing the patents-in-suit, proposed a license, and threatened litigation.  (Appx1053-54; Appx1056; Appx99-100; Appx102.)  This Court has long decried "patent-enforcement-by-letter tactics."  *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 737 (Fed. Cir. 1988), *overruled on other grounds by MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).  Veiled threats of a patent infringement lawsuit are not harmless.  Accusing a party of infringing a patent has consequences—it opens the door to potential enhanced damages and prompts that party to expend substantial resources investigating the allegations.

Where a patent holder has no capacity to monetize its patent absent enforcement, the threat of litigation is particularly acute.  *See Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363-64 (Fed. Cir. 2009) (recognizing that correspondence from a "'non-competitor patent holding company … may invoke a

different reaction than would a meet-and-discuss inquiry by a competitor'")

(citation omitted).  A defendant that is "solely a licensing entity … receives no

benefits from its patents" without enforcing them.  *Id.*  Papst has acknowledged

that it uses "litigation" as "a means to achieving" a license.  (Appx1724.)  As one

court explained, "the business of Papst is *litigation*, not invention or production.

Litigation is the business model whereby Papst, when successful, achieves royalty

payments from others…."  *In re Papst Licensing GmbH & Co. KG Litig.*, 273

F.R.D. 339, 343 (D.D.C. 2011) (citation omitted).  And "the threat of litigation

alone often achieves royalty payments."  *Id.*

  Moreover, Papst did more than send letters to enforce the patents-in-suit.

Papst's executives and agents, including counsel licensed to practice in California,

made repeated trips to California to accuse Xilinx and Altera of infringement and

threaten litigation.  (Appx219-20 ¶¶ 7-9; Appx1797-98 ¶¶ 8-9; Appx1802 ¶ 2;

Appx1790-91; Appx1871-72.)[6]  Such "physical entry into the State—either by the

defendant in person or through an agent, goods, mail, or some other means—is

---

[6] The purpose of an attorney joining the bar of a state is to conduct business there, and thus the activities of a patentee's out-of-state lawyer licensed in a forum are as relevant as the activities of an out-of-state distributor that conducts business in a forum.  *See Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1457 (Fed. Cir. 1997) (addressing relevance of a defendant's dealings with an exclusive distributor that conducted business in forum).

certainly a relevant contact." *Walden*, 134 S. Ct. at 1122 (citing *Keeton*, 465 U.S. at 773-74).

Notably, this Court has distinguished physical entry involving "enforcement-related activities"—attempts to obtain a license through threats of litigation—from communications "focused on the creation of a cooperative business arrangement to market" a product. *Radio Sys.*, 638 F.3d at 791. Here, Papst visited California for the purpose of enforcing patents via threats of litigation, which is the only business it conducts.

In short, the declaratory relief claims in this case arise directly out of Papst's "enforcement-related activities" in California—namely, its targeting of potential licensees, accusations of infringement, licensing demands, and litigation threats directed to Xilinx and Altera executives at those companies' California headquarters. *See Inamed*, 249 F.3d at 1362 (holding that declaratory relief claim "arises directly out of [defendant]'s act of sending an infringement letter"); *Electronics for Imaging*, 340 F.3d at 1351 (holding that declaratory claim arose out of contacts including "the visit of defendants' representatives").

### C.   The Assertion of Personal Jurisdiction Over Papst Is Reasonable and Fair.

Once minimum contacts have been established, "the defendant may still defeat jurisdiction by marshaling a compelling case against jurisdiction on the grounds that its exercise would be unreasonable, contrary to concepts of fair play

and substantial justice." *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996). "The reasonableness inquiry encompasses factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Electronics for Imaging*, 340 F.3d at 1351-52.

Although Papst bore the burden to show unreasonableness based on the above factors, Papst did not address any of them in the district court. Instead, it relied on a "rule" fashioned by this Court "as part of the 'reasonable and fair' portion of the due process inquiry in personal jurisdiction cases, that, *without more*, a patentee's *act of sending letters* to another state claiming infringement and threatening litigation is not sufficient to confer personal jurisdiction in that state." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 885 (Fed. Cir. 2008) (emphasis added); *accord* Appx1039-43. But Papst did far more than send letters, and in any event, as discussed below, any "rule" shifting the burden on this portion of the due process inquiry from the defendant patent holder to the declaratory judgment plaintiff would be inconsistent with controlling precedent. *See infra* Part II.C.

Papst specifically targeted California in its attempts to monetize patents that it acquired from a California company with which it maintains a continuing

relationship involving those patents.  (Appx2102-23.)  It hired California attorneys to maintain the patents-in-suit and California-licensed attorneys to enforce them. (Appx1822; Appx1824; Appx1826; Appx1791-92; Appx1871-72.)  And it repeatedly travelled to California to threaten litigation.  (Appx219-20 ¶¶ 7-9; Appx1797-98 ¶¶ 8-9; Appx1802 ¶ 2.)  In light of these additional California activities, Papst is not protected "against a declaratory judgment action brought in the foreign forum to which [it] directed its actions."  *Campbell*, 542 F.3d at 886; *see also Electronics for Imaging*, 340 F.3d at 1351 (other forum state activities sufficient for personal jurisdiction included visiting the plaintiff, hiring an attorney, and telephoning the plaintiff in the forum); *Genetic Implant Sys.*, 123 F.3d at 1458 (defendant engaged in a program to develop a market in the forum state, including developing customer lists there).

Given the magnitude of Papst's California contacts, there is nothing unfair about subjecting Papst to jurisdiction in California.  *First*, by repeatedly entering California to threaten litigation on the patents-in-suit and initiating a half-dozen lawsuits on other patents in California in recent years, Papst has demonstrated that it is not burdensome to litigate in that state.  *See Viam*, 84 F.3d at 430 (initiating an unrelated suit in the same district illustrated that defendant "has found a way to shoulder successfully the burden of litigating in California").

*Second*, "California has a substantial interest in protecting its residents from unwarranted claims of patent infringement." *Electronics for Imaging*, 340 F.3d at 1352; *see also Inamed*, 249 F.3d at 1363 (noting "California's substantial interest in 'providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors'") (quoting *Burger King*, 471 U.S. at 473). Moreover, California has "definite and well-defined interests in commerce and scientific development." *Viam*, 84 F.3d at 430. Where "a defendant's connections to the forum are so strong as to impact on those interests, as is true in this case, allowing the forum to exercise jurisdiction cannot be said to be unfair." *Id.*

*Third*, California-based Xilinx and Altera have strong interests in clearing the air of infringement allegations without waiting for Papst to sue. The Declaratory Judgment Act was intended to vindicate those interests. *See Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) (The purpose of the Act "in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights."). In particular, Xilinx and Altera have "an interest in obtaining 'convenient and effective' relief from a nearby federal court." *Breckenridge Pharm., Inc. v. Metabolic Labs., Inc.*, 444 F.3d 1356, 1367 (Fed. Cir. 2006). It is not unfair to require a foreign patent assertion entity that threatens litigation against operating companies in a forum that it regularly targets to be subject to suit in that forum when an operating company

tires of the threats. *Cf. Viam*, 84 F.3d at 429-30 ("It is not unfair to require that an out-of-state patent holder who asserts its rights through a local distributor in its regular chain of distribution against an in-state party be held to have subjected itself to the due process of the relevant jurisdiction.").

*Fourth*, requiring Papst to defend claims in the Northern District of California will promote the efficient resolution of the controversies between the parties. Although Papst is challenging the ruling, the magistrate judge in the District of Delaware has granted Xilinx's and Altera's motions to transfer the patent infringement actions Papst filed in that court to California because California is the more convenient forum. *See Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, No. CV 14-1375-LPS-CJB, 2015 WL 5138154 (D. Del. Sept. 1, 2015). Allowing Xilinx's and Altera's declaratory judgment claims to proceed in the same court as Papst's infringement claims will promote judicial economy. *See Electronics for Imaging*, 340 F.3d at 1352 (noting that patent holder's infringement suit in another district could be consolidated with a parallel declaratory judgment action).

*Fifth*, there is no conflict between the interests of Delaware (Papst's preferred forum) and California in furthering their own substantive laws because federal patent law would govern Xilinx's and Altera's noninfringement claims regardless of the forum. *Id.*

In short, this is not "one of the 'rare' situations in which sufficient minimum contacts exist but where the exercise of jurisdiction would be unreasonable." *Id.* (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994); *Burger King*, 471 U.S. at 477). Papst is subject to personal jurisdiction in California.

## II. THE DISTRICT COURT ERRED IN RULING THAT IT LACKED SPECIFIC JURISDICTION OVER PAPST

Despite acknowledging Papst's "many connections to the state of California," the district court concluded that Federal Circuit precedent prevented it from exercising jurisdiction. (Appx23.) The district court was wrong. If this Court disagrees, however, the time has come to clarify or reconsider that precedent.

### A. Categorically Disqualifying Non-Exclusive Licensing as a Jurisdictional Contact Conflicts with Controlling Precedent.

Long ago, the Supreme Court "abandoned more formalistic tests" "in favor of a more flexible inquiry into whether a defendant's contacts with the forum made it reasonable … to require it to defend the suit in that State." *Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992). And although this Court has required "'other activities' in addition to cease-and-desist letters" to establish specific personal jurisdiction in patent-related declaratory judgment actions, it has not set forth an

exhaustive list of all possible activities or circumstances that can support jurisdiction. *Avocent*, 552 F.3d at 1334.

The district court, however, went much further and interpreted this Court's precedent as holding that all licensing efforts short of entering an exclusive license with a forum resident would fail to support specific personal jurisdiction in a patent-related declaratory judgment action. The district court's bright-line rule of exclusion would apply even when the patent holder's sole business consists of litigation-backed non-exclusive licensing and includes decades of past infringement suits in the forum. (Appx12; Appx14-15; Appx17-20.) Such a mechanical analysis misreads this Court's case law and cannot be reconciled with Supreme Court precedent. *See Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) (condemning "[m]echanical or quantitative evaluations of the defendant's activities in the forum" when analyzing personal jurisdiction).

This Court's cases did not require the district court to ignore Papst's "extra-judicial patent enforcement" in California. Papst's California-directed conduct included acquiring patents from one forum resident with the intention of seeking licenses from other forum residents followed by litigation threats delivered personally in the forum to those very enforcement targets. (*See* Appx14-17.) Contrary to the district court's approach, this Court has held that "visit[ing]" an alleged infringer's forum offices is relevant to the jurisdictional analysis,

particularly in the context of a pattern of communications directed to the alleged infringer. *Electronics for Imaging*, 340 F.3d at 1351.[7]

Nor was the district court justified in relying on *Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009), in holding that "in-person licensing negotiations cannot justify an exercise of specific jurisdiction." (Appx15.)  In *Autogenomics*, the appellant had abandoned its reliance on in-person licensing negotiations, ostensibly based on *Avocent* (*see Autogenomics*, 566 F.3d at 1014-16, 1021), but *Avocent* did not address in-person licensing negotiations (*see Avocent*, 552 F.3d at 1326 (addressing allegations that patent holder "merely sen[t] notice letters at residents of the forum")).  The other cases cited by the district court similarly failed to address in-person, in-forum litigation threats.  *See Breckenridge*, 444 F.3d at 1366 (noting that "sending letters into the forum state" alone was insufficient); *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1353 (Fed. Cir. 2002) (addressing letters followed by "isolated phone calls").  The decisions

---

[7] Not only did the district court ignore the relevance of visiting a forum to the jurisdictional analysis in *Electronics for Imaging*, but it misunderstood this Court's distinction of that case in *Radio Systems*.  In *Radio Systems*, this Court differentiated between communications related to "enforcing or defending" a patent and communications "focused on generating a market for" a defendant's product, which was at issue in that case.  *Radio Sys.*, 638 F.3d at 790.  The district court did not appreciate that the in-forum communications justifying jurisdiction in *Electronics for Imaging* involved the same sort of enforcement-related activities that are at issue here—attorneys attempting to reach a licensing deal while threatening litigation.  (*See* Appx1053-54; Appx1797-98 ¶¶ 8-9; Appx1733.)  The more relevant authority is thus *Electronics for Imaging*, not *Radio Systems*.

cited by the district court do not constitute authority for a proposition they did not address. *See United States v. Mitchell*, 271 U.S. 9, 14 (1926). This Court should clarify that its jurisprudence does not categorically exclude all licensing demands from a jurisdictional analysis regardless of their nature.

The district court's categorical disqualification of non-exclusive licensing activities is particularly flawed when applied to patent assertion entities that acquire patents for the sole purpose of enforcing and monetizing them by obtaining multiple non-exclusive licenses through litigation threats or otherwise. *See Papst*, 273 F.R.D. at 343 (recognizing that "threat of litigation alone often achieves royalty payments"). It is against the business interests of such entities to enter exclusive licenses. As a result, if non-exclusive licensing activities can never justify jurisdiction, patent assertion entities would be immunized from suit in the very forums where they purposefully direct and routinely conduct their business. That would eviscerate the three-part test for specific jurisdiction, and cannot be the law. *See Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1010 (5th Cir. 1982) (emphasizing "the nature of the business" of interstate trucking services broker in finding that "it is both reasonable and just to require lesser forum contacts" in that context because "[t]o hold otherwise would tend to immunize from suit by anyone with whom they do business, in any but their home jurisdiction, those engaged in" that business).

The circumstances surrounding Papst's acquisition and enforcement of the patents-in-suit highlight the district court's error.  Papst acquired the patents after identifying dozens of enforcement targets comprised almost entirely of companies based or operating in California.  (Appx2102-23; *see supra* note 3.)  The district court erroneously found that Papst had not "contacted any of these 'targets,' much less actually pursued licensing agreements with them."  (Appx16.)  In actuality, Xilinx and Altera were on the target list and Papst proceeded to threaten them with litigation while pursuing in-person licensing discussions in California.  (*See, e.g.*, Appx1053-54; Appx99-100; Appx1797-98 ¶¶ 8-9.)

Declaratory Judgment Act subject matter jurisdiction, which is uncontested in this case, may be based on far less aggressive patent assertion activities than those here.  *See, e.g.*, *Hewlett-Packard*, 587 F.3d at 1364 (finding declaratory judgment jurisdiction based on two direct contacts by patent assertion entity "making an implied assertion of its rights" against defendants).  Requiring a different class of enforcement activities to find personal jurisdiction in the forum where litigation is threatened would undermine the effectiveness of that Act.

Moreover, although this Court has not yet addressed the relevance of a patent holder acquiring the asserted patents from the very forum where it proceeds to conduct a licensing and enforcement campaign, the creation of "continuing relationships" with forum residents and a contract's "contemplated future

consequences" always have been relevant to the jurisdictional analysis. *Burger King*, 471 U.S. at 479. Here, the Patent Purchase Agreement establishes a continuing relationship between California-based Rambus, the seller of the patents-in-suit, and Papst, the ultimate buyer of the patents. That agreement forbids Papst from asserting the patents against Rambus's licensees, requires Papst to reimburse Rambus for Rambus's "Continued Assistance" with litigation to enforce the patents, and obligates Rambus to offer such assistance only to Papst. (Appx936 § 8.) And any disputes arising from those obligations must be litigated in California, further highlighting the California ties between Papst and its efforts to enforce the patents-in-suit. (Appx938-39 § 11.5.)

The district court's reading of this Court's personal jurisdiction jurisprudence as creating a categorical rule against jurisdiction grounded in non-exclusive licensing activities was erroneous. Personal jurisdiction is a generally applicable doctrine, no more susceptible to bright-line rules in patent cases than in any others. *Cf. Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (concluding that patent law does not support an exception to Federal Rule of Civil Procedure 52); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006) (rejecting "general rule" for granting injunctive relief because principles of equity apply "in patent disputes no less than in other cases governed by such standards"). Other circuits have found contacts analogous to those here sufficient to establish

personal jurisdiction.  *See, e.g.*, *Schneider v. Hardesty*, 669 F.3d 693, 702 (6th Cir. 2012) (mailing of two letters to forum with representations "indicative of an intent to establish an ongoing contact"); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997) (mailing of "cease and desist" letter and attempts "to settle alleged legal claims" by individual in the "business" of "negotiating royalty agreements with alleged violators of his patents").  This Court's precedents do not require a different result.  If, however, this Court concludes that the district court's conclusion was dictated by its precedents, Xilinx and Altera respectfully ask the Court to reconsider those precedents.

> **B.    It Is Unfair to Allow Foreign Patent Assertion Entities to Evade Jurisdiction in the Forums Where They Routinely Conduct Business.**

This Court has analyzed personal jurisdiction over a foreign patent assertion entity only once, and in that case it concluded that the patent holder's licensing activities in a United States forum supported the exercise of specific jurisdiction.  *See Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1352 (Fed. Cir. 2002) (concluding that a Canadian patent assertion entity that entered a licensing agreement with a Kansas plaintiff was subject to jurisdiction in Kansas).  The district court did not address *Deprenyl*'s holding, nor did it consider the unique concerns raised by foreign patent assertion entities

engaged in the business of acquiring and enforcing patents through licensing and litigation. This too was legal error.

A defendant's business model is relevant to the jurisdictional analysis. *See Mississippi Interstate*, 681 F.2d at 1010. The very business of patent assertion entities such as Papst is patent acquisition and enforcement. If a patent assertion entity is not subject to jurisdiction in the forums in which it carries out its sole business activities, then it can control the locus of litigation arising from its business. This problem is even more acute in the context of a foreign patent assertion entity, which can take advantage of the United States patent laws and the benefits of a state's economic market, while insulating itself from suit in any forum but the Eastern District of Virginia—3,000 miles away from California and other technology hubs in the western United States. *See* 35 U.S.C. § 293 (providing for service on and jurisdiction over nonresident patentees in the Eastern District of Virginia).

The district court reasoned that the available forum established by § 293 ensures that Xilinx, Altera, and other accused infringers will not be deprived of a remedy when foreign patent assertion entities threaten litigation. But this Court has recognized that § 293 supports, rather than obstructs, expansive jurisdiction— "the statute represents an important Congressional judgment that in exchange for obtaining the benefits of a United States patent, it is appropriate to require foreign

patentees to submit to *broader jurisdiction* in United States Federal Court than that to which they would otherwise be subject." *Deprenyl*, 297 F.3d at 1353 (emphasis added). Nothing in § 293 precludes the exercise of jurisdiction in other forums. Further, this Court has expressed its "concern[] that foreign patentees … may engage in significant commercialization and licensing efforts in a state" while shielding themselves from jurisdiction in that state. *Autogenomics*, 566 F.3d at 1021. Although the Court ultimately concluded that the district court lacked jurisdiction over the patent holder in *Autogenomics*, the patent holder there was an operating company, not a patent assertion entity. *Deprenyl* is the more relevant authority here.

Exercising jurisdiction over foreign patent assertion entities that choose to enforce their patents in a forum through litigation-backed licensing demands also is consistent with the Supreme Court's admonitions against jurisdictional "manipulation." *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010). If foreign patent assertion entities that threaten litigation are effectively immunized from suit in all forums but the Eastern District of Virginia, a growing number of patent holders will outsource their patent enforcement to foreign companies, just as California-based Rambus did here. That, in turn, would hinder the resolution of patent infringement claims in the forums most directly connected to the dispute. Indeed, considering this Court's expansive view of personal jurisdiction over accused

infringers (*see, e.g.*, *Beverly Hills Fan*, 21 F.3d at 1565 (finding that purposeful shipment of accused product into forum through an established distribution channel establishes specific jurisdiction)), patent holders would retain broad authority to sue operating companies throughout the United States, while facing only narrow exposure to suit in the forum most directly connected to a dispute. The Court should not allow this fundamental asymmetry and the forum shopping that it condones to persist.

**C.    The District Court's Isolation of Individual Connections to California Was Erroneous.**

In *Daimler*, the Supreme Court addressed the interplay between general and specific jurisdiction. The Court noted that "continuous and systematic" in-state activities, while insufficient to establish general jurisdiction unless they render a defendant at home in the state, will establish specific jurisdiction when they also give rise to the suit. *Daimler*, 134 S. Ct. at 761. Since *International Shoe*, however, the Supreme Court's specific jurisdiction jurisprudence has focused on "cases involving 'single or occasional acts' occurring or having their impact within the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2854 (2011). Thus, it has been in the context of "'single or occasional acts'" in a forum, not "continuous and systematic" in-state activities, that the Supreme Court has rigorously scrutinized the "'nature and quality and the circumstances'"

of the defendant's in-forum activities.  *Daimler*, 134 S. Ct. at 761 n.17 (quoting

*International Shoe*, 326 U.S. at 318).

Ignoring the distinction between "single or occasional acts" and "continuous

and systematic" in-state activities, the district court applied an improperly rigid

framework to assess Papst's decades of contact with California.  The district court

segmented and scrutinized each class of Papst's activities in isolation, discounting

each as insufficient to establish specific jurisdiction alone or as completely

irrelevant to the inquiry.  According to the district court:

- "Papst's letters are insufficient by themselves" (Appx13);

- "Papst's meetings … in California are similarly insufficient" (Appx14);

- "maintaining a list of license targets … is insufficient" (Appx16);

- "the Rambus Agreement is an insufficient basis" (Appx20);

- "Papst's use of California attorneys to pay PTO maintenance fees is an insufficient basis" (Appx21);

- "Papst's retention of [a California-licensed attorney to represent it in enforcement activities] is not a sufficient basis" (*id.*);

- "allegations that Papst may have threatened Altera's customers are insufficient" (Appx22); and

- "Papst's litigations in this state involving other patents are irrelevant" (*id.*).

While the district court's order also summarily stated these contacts "considered as

a whole" were insufficient to support jurisdiction, the order did not identify a

single authority from the Supreme Court or this Court finding specific jurisdiction lacking in the face of such pervasive contacts.  (Appx23.)  There is none.

Specific "jurisdiction unquestionably [can] be asserted where the corporation's in-state activity is 'continuous and systematic' and *that activity gave rise to the episode-in-suit*."  *Goodyear*, 131 S. Ct. at 2853 (quoting *International Shoe*, 326 U.S. at 317) (emphasis in original).  For more than 20 years, Papst has been acquiring patents from others and asserting those patents to extract license agreements from California-based technology companies.  On at least seven such occasions involving a dozen companies operating in California, Papst has resorted to infringement litigation in California courts to pursue its licensing objectives.  Papst's purchase of the '891 and '759 patents and Papst's efforts to license them through threats of litigation delivered in-person at the San Jose headquarters of Xilinx and Altera were an extension of Papst's consistent and systematic business practices conducted in California.  Taken together, those contacts establish the fundamental equity of exercising jurisdiction over Papst in these cases.

The district court's approach of dissecting and discounting Papst's contacts one at a time cannot be reconciled with binding precedent.  "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, [non-case-specific] contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport

with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *International Shoe*, 326 U.S. at 320). This "reasonableness" analysis necessarily requires consideration of all contacts with a forum, and places the burden on the defendant to establish that the exercise of jurisdiction would be *unreasonable*. *Electronics for Imaging*, 340 F.3d at 1351-52.

The district court cited this Court's decision in *Avocent* as justification for treating Papst's previous patent infringement lawsuits in California as "irrelevant" and ignoring all other contacts that did not involve enforcement of the '891 and '759 patents. (Appx22.) In *Avocent*, the Court stated that it had "consistently required the defendant to have engaged in 'other activities' that relate to the *enforcement* or the *defense of the validity* of the relevant patents," and that "the patentee's own commercialization activity … is of no real relevance to the enforcement or defense of a patent." 552 F.3d at 1334-35 (emphasis in original). But the Court did not adopt a sweeping rule rejecting the relevance of any activities that do not involve enforcement of the patents-in-suit, let alone activities demonstrating that a patent assertion entity deliberately targets a forum as part of its core patent enforcement business. Nor could this Court have done so, in light of Supreme Court precedent rejecting such categorical rules. Indeed, this Court has considered pervasive activities occurring before a patent-in-suit was obtained in concluding that a patent holder was subject to specific personal jurisdiction within

a state. *See Genetic Implant Sys.*, 123 F.3d at 1458 (concluding that patent holder "engaged in substantial activities in the state" based in part on pre-patent attempts to develop a market there).

The district court's inflexible approach also departs from this Court's original rationale for finding cease-and-desist letters, by themselves, insufficient to establish specific jurisdiction.  In *Red Wing Shoe*, this Court reasoned that "[s]tandards of fairness demand that [a patent holder] be insulated from personal jurisdiction in a distant foreign forum when its *only contacts* with that forum were efforts to give proper notice of its patent rights."  148 F.3d at 1361 (emphasis added).  But Papst's contacts with California, including its enforcement of patents-in-suit acquired from a California company, extend far beyond the three letters at issue in *Red Wing Shoe* and the isolated contacts in the other cases cited by the district court.[8]  Papst's longstanding and pervasive activities in California, from which Xilinx's and Altera's declaratory claims indisputably arise, make it reasonable and fair to subject Papst to jurisdiction in California.  The district court

---

[8] Notably, the patent holder in *Red Wing Shoe* was an entity created by two patent inventors (Hockerson and Halberstadt) to assert rights over the two patents they had invented.  *See  Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 966 F. Supp. 833, 834 (D. Minn. 1997).  That an inventor's patent holding company met its burden to establish that exercising jurisdiction over it would be unreasonable hardly suggests that it would be unreasonable to exercise jurisdiction over a global patent assertion entity with a history of acquiring and enforcing patents in a forum.

erred by relying on this Court's precedents to exclude many of Papst's California

contacts from its due process analysis.

## III. THE DISTRICT COURT ABUSED ITS DISCRETION BY RULING THAT IT LACKED GENERAL JURISDICTION WITHOUT ALLOWING DISCOVERY ON THAT TOPIC

Jurisdictional discovery is warranted "where pertinent facts bearing on the

question of jurisdiction are controverted or where a more satisfactory showing of

the facts is necessary." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280,

1285 n.1 (9th Cir. 1977). A denial of discovery is reviewed for abuse of discretion,

which may include mistakes of law and clear errors of fact. *See Twentieth Century

Fox Int'l Corp. v. Scriba*, 385 F. App'x 651, 652 (9th Cir. 2010) (vacating

dismissal for lack of personal jurisdiction and remanding with instructions to

permit jurisdictional discovery). Here, the district court abused its discretion by

denying jurisdictional discovery based on a misapplication of the standard for

general jurisdiction and an erroneous understanding of the limited scope of

voluntary discovery that Papst had provided.

Xilinx and Altera presented evidence that California is the primary forum for

Papst's enforcement targets, licensees, and revenues, and asked the district court to

order discovery if the court believed the record was inadequate to reach that

determination. (Appx775 n.4; Appx2009 n.4.) The court concluded that Papst was

not subject to general jurisdiction (Appx8-10) and then denied Altera's request for

general jurisdiction discovery, while ignoring Xilinx's nearly identical request (Appx23-24).

The district court's abuse of discretion was rooted in its misapprehension of the legal standard for exercising general jurisdiction. The exercise of general personal jurisdiction requires that a foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851. Although a corporation is subject to general jurisdiction in its state of incorporation and its principal place of business, general jurisdiction is not limited to those forums. *See Daimler*, 134 S. Ct. at 761 n.19. Determining whether a defendant is subject to general personal jurisdiction in other forums requires "an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.* at 762 n.20. For instance, a corporation "principally targeting the California market and that has substantially all of its sales and operations in the State" would be subject to general jurisdiction in California. *Id.* at 772 (Sotomayor, J., concurring).

Papst has acquired patents from California patent holders and enforced its patents in California through litigation and licensing activities for decades. (*See supra* Statement of the Case, Parts A-C.) Of the 24 licensees listed on Papst's website, 23 are headquartered in California, have substantial operations in California, or, in the case of foreign licensees, have their United States

headquarters or corporate offices in California. (*See* Appx1722-23; Appx1712-17; Appx1735; *supra* note 2.) Further, according to the limited publicly-available information about Papst's revenues, Papst has generated tens of millions of dollars from California licensees, including $24 million from Western Digital, and likely much more. (*See* Appx1727-28; Appx1830; Appx1839-41 (reporting, based on "an interview with both owners of [Papst Licensing]," certain revenue earned by Papst Licensing from settlement licenses with storage technology companies, many of which are based in California).)

These facts, which Papst did not contradict, indicate that the bulk of Papst's revenues are derived from California. And the California-centric nature of Papst's business suggests not only that Papst has continuous and systematic affiliations with California, but that it is essentially at home there. In declining to find general jurisdiction over Papst, the district court did not compare the volume of Papst's business activities in California to the volume of its activities in other jurisdictions. (*See* Appx9:2-5.) Nor did the district court address the evidence establishing that portions of Papst's operations and revenues are located in or derived from California. And the court did not draw inferences in Xilinx's and Altera's favor on those issues, as required. *See Electronics for Imaging*, 340 F.3d at 1349; *Deprenyl*, 297 F.3d at 1347.

"Further discovery on this issue might well demonstrate facts sufficient to constitute a basis for jurisdiction." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). Specifically, evidence regarding Papst's enforcement activities in California and the proportion of the revenues it derives from enforcement activities in California may establish that Papst is "principally targeting the California market" and obtains a majority of its revenues from California licensees. *See Daimler*, 134 S. Ct. at 772 (Sotomayor, J., concurring). The district court did not even consider the potential impact of this discovery because it believed that the exercise of general jurisdiction outside of a state of incorporation or principal place of business is only proper where a company has a "surrogate place of incorporation or temporary place of business." (Appx10:9-11.) But that is not what *Daimler* held. Rather, the Supreme Court used that fact pattern to illustrate circumstances that had supported general jurisdiction in the past. *Daimler*, 134 S. Ct. at 761 n.19 (discussing *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952)). The general jurisdiction inquiry set forth in *Daimler* focuses on whether a company's activities in a forum, *compared to the entirety of its activities*, support jurisdiction. *Daimler*, 134 S. Ct. at 762 n.20.

The district court also asserted that Altera had been unable to make a prima facie showing of jurisdiction even though Papst had provided some information

voluntarily.  (Appx24.)  But Papst did not provide any discovery related to *general* jurisdiction, i.e., its "activities in their entirety, nationwide and worldwide." *Daimler*, 134 S. Ct. at 762 n.20.  Instead, it limited discovery to issues related to the patents-in-suit, i.e., activities primarily relevant to specific jurisdiction.  (*See* Appx1401.)  In fact, Papst refused to produce any general-jurisdiction discovery or to answer questions on those topics during deposition.  (Appx1401-02; Appx782:6-83:24; Appx785:3-13; Appx786:12-87:14.)  At no point did Xilinx or Altera obtain general-jurisdiction discovery, and Papst's voluntary provision of limited specific-jurisdiction discovery is irrelevant to whether further general-jurisdiction discovery was warranted.

The district court abused its discretion in declining to order general jurisdiction discovery.  Accordingly, if this Court does not direct the district court to exercise specific personal jurisdiction, it should nonetheless reverse the district court's order of dismissal and direct that court to allow jurisdictional discovery.

## <u>CONCLUSION</u>

This Court should reverse the district court's order dismissing these actions and remand with instructions to exercise jurisdiction over Xilinx's claims for declaratory judgment of non-infringement and Altera's claims for declaratory judgment of non-infringement and invalidity.  At a minimum, it should remand for further discovery on jurisdictional issues.


Dated:        December 14, 2015        Respectfully submitted,


/s/ Matthew J. Silveira
PATRICK T. MICHAEL
MATTHEW J. SILVEIRA
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 626-3939

*Attorneys for Plaintiff-Appellant*
*Xilinx, Inc.*


/s/ Chad S. Campbell
CHAD S. CAMPBELL
DAN L. BAGATELL
JESSICA L. EVERETT-GARCIA
JONATHAN D. ALLRED
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012
(602) 351-8000

*Attorneys for Plaintiff-Appellant*
*Altera Corporation*

## <u>ADDENDUM:  DISTRICT COURT DECISION</u>

United States District Court
Northern District of California

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12   XILINX, INC.,                        Case No. 14-CV-4963-LHK

13                   Plaintiff,           **ORDER GRANTING DEFENDANT'S**
                                          **MOTIONS TO DISMISS**
14          v.

15   PAPST LICENSING GMBH & CO.KG,

16                   Defendant.

17   ALTERA CORPORATION,

18                   Plaintiff,           Related Case No. 14-CV-4794-LHK

19          v.

20   PAPST LICENSING GMBH & CO.KG,

21                   Defendant.

22

23          Plaintiffs Altera Corporation ("Altera") and Xilinx, Inc. ("Xilinx") (collectively,

24   "Plaintiffs") seek declaratory judgment that their products do not infringe United States Patent

25   Nos. 6,704,891 and 6,574,759 (collectively "the patents-in-suit") and that the claims of the

26   patents-in-suit are invalid.  No. 14-CV-4794, ECF No. 1 ("Altera Compl."); No. 14-CV-4963,

27   ECF No. 1 ("Xilinx Compl.").  Before the Court are motions to dismiss filed by Papst Licensing

28                                          1

1    GMBH & Co. KG ("Papst"), the owner of the patents-in-suit.  No. 14-CV-4794, ECF No. 18

2    ("Papst MTD-Altera"); No. 14-CV-4963, ECF No. 18 ("Papst MTD-Xilinx").  Papst, a German

3    corporation headquartered in St. Georgen, Germany, moves to dismiss for lack of personal

4    jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  In the alternative, Papst asks this

5    Court to transfer both actions to the U.S. District Court for the District of Delaware.  Altera and

6    Xilinx filed oppositions (No. 14-CV-4794, ECF No. 45 ("Altera Opp."); No. 14-CV-4963, ECF

7    No. 52 ("Xilinx Opp.")), and Papst filed replies (No. 14-CV-4794, ECF No. 51 ("Papst Reply-

8    Altera"); No. 14-CV-4963, ECF No. 56 ("Papst Reply-Xilinx")).[1]  Because the issues presented in

9    Papst's motions are identical, and the facts nearly identical with respect to Altera and Xilinx, the

10   Court resolves both motions in the instant order.

11        The Court finds this matter suitable for decision without oral argument under Civil Local

12   Rule 7-1(b) and hereby vacates the motion hearings set for July 23, 2015, at 1:30 p.m.  Having

13   considered the parties' submissions, the relevant law, and the record in this case, the Court hereby

14   GRANTS Papst's motion to dismiss for lack of personal jurisdiction in both actions.

15   **I.      BACKGROUND**

16        **A.      Factual Background**

17             **1.      The parties**

18        Altera and Xilinx are Delaware corporations headquartered in San Jose, CA.  Altera

19   Compl. ¶ 1; Xilinx Compl. ¶ 2.  Altera and Xilinx design and manufacture Field Programmable

20   Gate Arrays (FPGAs), a type of semiconductor.  Altera Opp. 1; Xilinx Opp. 2.  FGPAs are

21   programmable logic devices found in advanced electronic systems in a wide range of markets,

22   including aerospace, wired and wireless communications, automotive, consumer electronics, high

23   performance computing, medical, and broadcasting.  Xilinx Opp. 2.  Altera and Xilinx are

24   competitors.  FGPAs manufactured by Altera, Xilinx, and Lattice Semiconductor ("Lattice")

United States District Court
Northern District of California

25

26   [1] Much of the parties' briefing and accompanying exhibits was filed under seal.  The Court will
     rule on the parties' administrative sealing motions by separate order.  However, the facts revealed
27   in the instant order, despite citing to documents the parties filed entirely under seal, are not
     sealable under Ninth Circuit authority.

28
                                        2
     Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
     ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

1    comprise of 90% of the market.  Altera Opp. 1.

2         Papst, a non-practicing entity whose sole business is to monetize and license intellectual

3    property rights, has no offices or employees in California.  Papst MTD-Xilinx 2.  In the course of

4    its business, Papst has concluded more than 160 licensing agreements with various companies.

5    Altera Opp. 5; Xilinx Opp. 3.  Some of Papst's licensees are headquartered in California. *Id*. Papst

6    has pursued patent infringement claims against thirteen different companies in California courts.

7    Xilinx Opp. 11.

8              **2.      Papst's acquisition of the patents-in-suit**

9         Papst acquired the patents-in-suit from FTE Exchange ("FTE"), a company incorporated

10   and headquartered in Texas, on October 2, 2012.  Xilinx Opp. 6.  Five days earlier, FTE had

11   acquired the patents-in-suit from Rambus, Inc. ("Rambus"), a Delaware corporation headquartered

12   in Sunnyvale, CA.  *Id*.  Under the Patent Purchase Agreement between Papst and FTE ("the Papst

13   Agreement"), Papst agreed to assume all of FTE's rights and obligations under the Patent

14   Purchase Agreement between FTE and Rambus ("the Rambus Agreement").  *Id.*

15        Pursuant to the Rambus Agreement, Rambus retained a "worldwide, perpetual, irrevocable,

16   fully paid-up, royalty free, non-exclusive, non-transferrable . . . right and license" to the patents-

17   in-suit.  *Id.* at 15.  In addition, FTE agreed not to sue thirty specifically-identified companies for

18   infringement of the patents-in-suit.  *Id.* at 7.  Six of those companies are based in California.  *Id.*

19        The Rambus Agreement also contains a clause entitled "Seller's Continued Assistance and

20   Reimbursement." Papst Reply-Xilinx 11. The clause states that "nothing set forth in this

21   Agreement shall create an obligation for [Rambus] to provide assistance or otherwise perform

22   services." *Id*. However, in the event that FTE, or its designated legal representative, requests

23   Rambus's assistance during prosecution, reexamination, or reissue of the patents, or requests

24   Rambus's expertise during interference, priority, infringement, or other court proceedings, FTE

25   must compensate Rambus for reasonable costs incurred. *Id.*

26        The Rambus Agreement stipulates that all disputes arising out of or relating to the Original

27   Purchase Agreement shall be resolved by a court in Santa Clara, California and be governed by

28
                                            3
     Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
     ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

1    California law. Xilinx Opp. 6.

2         As owner of the patents-in-suit, Papst maintained a list of twenty-nine potential licensees,

3    twenty-eight of which have significant ties to California.  Xilinx Opp. 7.  Both Plaintiffs were

4    included on this list.  *Id.*  In addition, Papst retained a California-based law firm, which had

5    initially prosecuted the patents-in-suit, to ensure timely payment of PTO maintenance fees.  Xilinx

6    Opp. 15.

### 3.    Papst's negotiations with Plaintiffs

8         In January and April 2014, Papst sent letters to Plaintiffs accusing each of infringing the

9    patents-in-suit and requesting that each take a license to the patents-in-suit.  Papst MTD-Xilinx 3;

10   Xilinx Opp. 5; Papst MTD-Altera 3; Altera Opp. 3.  Neither Plaintiff responded to the first letter,

11   but both responded to the second.  Papst MTD-Xilinx 3; Papst MTD-Altera 3; Altera Opp. 3.

12   Subsequently, on July 17, 2014, Papst's Managing Director and legal counsel met with Altera at

13   Altera's San Jose offices to discuss Papst's allegations of infringement.  However, the parties did

14   not agree to a licensing arrangement.  Papst MTD-Altera 3; Altera Opp. 3.  On October 16, 2014,

15   Papst's representatives met separately with both Altera and Xilinx in their respective San Jose

16   offices to discuss Papst's patent infringement allegations and potential licensing arrangements.

17   Xilinx Compl. ¶ 12; Xilinx Opp. 5.  Again, no licensing agreements were reached.

### B.    Procedural History

19        On October 28, 2014, Altera filed this declaratory judgment action in this Court, seeking a

20   declaration that Altera does not infringe the patents-in-suit and that the patents-in-suit are invalid.

21   Altera Compl.  On November 7, 2014, Papst sued Lattice and Xilinx in the District of Delaware

22   alleging that they infringe the patents-in-suit.  *Papst Licensing GMBH & Co. KG v. Lattice*

23   *Semiconductor, Corp.*, No. 14-CV-1375-LPS-CJB (D. Del. Nov. 7, 2014); *Papst Licensing GMBH*

24   *& Co. KG v. Xilinx, Inc.*, No. 14-CV-1376-LPS-CJB (D. Del. Nov. 7, 2014).  Within hours, Xilinx

25   filed its declaratory judgment action against Papst in this Court, also seeking a declaration of non-

26   infringement and invalidity regarding the patents-in-suit.  Xilinx Compl.

27

28

4

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

1    On December 4, 2014, Papst and Xilinx met again, this time in Palo Alto, CA, to continue

2    discussions regarding Papst's infringement allegations.  Xilinx Opp. 6.  Papst's California-

3    licensed counsel was present during this meeting.  *Id.*

4    On February 6, 2015, in nearly identical motions, Papst moved to dismiss both declaratory

5    judgment actions for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure

6    12(b)(2) and in the alternative to transfer venue to Delaware.  Papst MTD-Xilinx; Papst MTD-

7    Altera.  On February 17, 2015, Papst sued Altera in the District of Delaware, alleging patent

8    infringement.  *Papst Licensing GMBH & Co. KG v. Altera Corp.*, No. 15-CV-162-LPS-CJB (D.

9    Del. Feb. 17, 2015).

10    On February 19, 2015, Judge Freeman related the two actions pending in this district,

11    which were then reassigned to the undersigned.  No. 14-CV-4794, ECF No. 26; No. 14-CV-4963,

12    ECF No. 32.

13    On February 24, 2015, Papst and Xilinx met a third time, this time at Xilinx's San Jose

14    headquarters, to discuss the pending litigation and potential licensing arrangements.  Xilinx Opp.

15    5-6.  No agreement was reached.

16    **II.    LEGAL STANDARD**

17    **A.    Rule 12(b)(2)**

18    Where a defendant moves to dismiss a suit for lack of personal jurisdiction pursuant to

19    Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that

20    jurisdiction is proper.  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Where, as

21    here, the defendant's motion is based on written materials rather than an evidentiary hearing, the

22    plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to

23    dismiss for lack of personal jurisdiction.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218,

24    1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127

25    (9th Cir.2010)); *see also Celgard, LLC v. SK Innovation Co.*, No. 2014-1807 (Fed. Cir. July 6,

26    2015), slip op. at 7 ("When the district court's determination of personal jurisdiction is based on

27    affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff

28

United States District Court
Northern District of California

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

1    usually bears only a prima facie burden.").  At this stage of the proceeding, "uncontroverted

2    allegations in plaintiff's complaint must be taken as true, and conflicts between the facts contained

3    in the parties' affidavits must be resolved in plaintiff's favor."  *Brayton Purcell*, 606 F.3d at 1127

4    (internal quotation marks, citations, and alterations omitted).  "If the district court concludes that

5    the existing record is insufficient to support personal jurisdiction . . . [jurisdictional] discovery is

6    appropriate where the existing record is inadequate to support personal jurisdiction and a party

7    demonstrates that it can supplement its jurisdictional allegations through discovery."  *Trintec*

8    *Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005) (quotation

9    and citation omitted).

10         **B.    Personal Jurisdiction**

11        Because the issue of personal jurisdiction in a declaratory action for non-infringement is

12   "intimately related to patent law," Federal Circuit law governs.  *Breckenridge Pharm., Inc. v.*

13   *Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006) (citation omitted).

14        There are two limitations on a court's power to exercise personal jurisdiction over a

15   nonresident defendant: the applicable state's long-arm statute and constitutional due process.

16   *Nuance Commc'ns, Inc. v. Abbyy Software House,* 626 F.3d 1222, 1230 (Fed. Cir.

17   2010) (quoting *3D Sys., Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1376–77 (Fed. Cir. 1998))

18   (quotation marks omitted).  California's long-arm statute reads: "A court of this state may exercise

19   jurisdiction on any basis not inconsistent with the Constitution of this state or of the United

20   States."  Cal. Civ. Proc. Code § 410.10.  Thus, because California's long-arm statute is coextensive

21   with constitutional due process requirements, the jurisdictional analysis collapses into a single due

22   process inquiry.  *Nuance*, 626 F.3d at 1230.

23         Due process precludes a court from asserting jurisdiction over a defendant unless the

24   defendant has minimum contacts with the forum state such that an exercise of jurisdiction would

25   not offend "traditional conception[s] of fair play and substantial justice."  *Int'l Shoe Co. v.*

26   *Washington*, 326 U.S. 310, 320 (1945).  The minimum contacts requirement ensures "that non-

27   residents have fair warning that a particular activity may subject them to litigation within the

28

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

1    forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1565 (Fed. Cir.

2    1994) (citations omitted).

3        The "minimum contacts" requirement can be satisfied in two ways: general jurisdiction or

4    specific jurisdiction.  General jurisdiction applies where a nonresident defendant's "affiliations

5    with the State are so 'continuous and systematic' as to render it essentially at home in the forum

6    state." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires*

7    *Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).   Where general jurisdiction is

8    inappropriate, the court may still exercise specific jurisdiction where "the defendant has

9    purposefully directed his activities at residents of the forum and the litigation results from alleged

10   injuries that arise out of or relate to those activities.'" *Deprenyl Animal Health, Inc. v. Univ. of*

11   *Toronto Innovations Found.,* 297 F.3d 1343, 1350–51 (Fed. Cir. 2002) (quoting *Inamed Corp. v.*

12   *Kuzmak,* 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

13       If the minimum contacts requirement is satisfied for general jurisdiction, the inquiry ends.

14   *See Daimler*, 134 S. Ct. at 762 n.20 (noting that when under general jurisdiction analysis, "if a

15   corporation is genuinely at home in the forum state . . . [a fairness factor analysis] would be

16   superfluous").   On the other hand, when "it has been decided that a defendant purposefully

17   established minimum contacts within the forum State" to sustain specific jurisdiction, "these

18   contacts may be considered in light of other factors to determine whether the assertion of personal

19   jurisdiction would 'comport with fair play and substantial justice.'" *Burger King Corp. v.*

20   *Rudzewicz,* 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe,* 326 U.S. at 320).  "The unique burdens

21   placed upon one who must defend oneself in a foreign legal system should have significant weight

22   in assessing the reasonableness of stretching the long arm of personal jurisdiction over national

23   borders." *Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403, 1417 (Fed. Cir. 2009)

24   (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 114 (1987)).

25   **III.    DISCUSSION**

26       The Court will first address Plaintiffs' contentions that the Court has general jurisdiction

27   over Papst, before turning to the issue of specific jurisdiction.

28

7

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

A.    General Jurisdiction

In *Daimler*, the U.S. Supreme Court established that a court may assert general jurisdiction over a nonresident defendant only when the defendant's "affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. 'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Daimler*, 134 S. Ct. at 760 (quoting *Goodyear*, 131 S. Ct. at 2853-54). The Court rejected the argument that a nonresident defendant should be subject to general jurisdiction "in every State in which [the defendant] engages in a substantial, continuous, and systematic course of business," finding that such a holding would be "unacceptably grasping." *Daimler*, 134 S. Ct. at 760. Nevertheless, the Court noted that in an "exceptional case," "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19.

Plaintiffs argue that Papst is subject to general jurisdiction in California because its substantial patent monetization activities constitute "continuous and systematic" business contacts. Xilinx Opp. 10; Altera Opp. 5. Plaintiffs argue that taken together, Papst's past patent infringement suits in California courts, licensing agreements with California companies, revenue from doing business in California, and California-based counsel constitute sufficient contacts to subject Papst to any and all types of suits in California. Altera Opp. 5-6; Xilinx Opp. 10-14. Xilinx also argues that "because of the technical subject matter of Papst's patent holdings . . . [Papst's] business model is constructed around patent enforcement against targets located in California, home to the world's technology capital, Silicon Valley." Xilinx Opp. 10.

Papst is not incorporated in California, nor does it have its principal place of business here. These facts, alone, are strong evidence that Papst is not at home in California. *Daimler*, 134 S. Ct. at 760; *see also Goodyear*, 131 S. Ct. at 2853-54 (noting that "the paradigm forum for the exercise

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  of general jurisdiction . . . [is the corporation's] domicile, place of incorporation, and principal

2  place of business" (citation omitted)).  Moreover, even if Papst's business contacts are

3  "continuous and systematic," a defendant's "substantial, continuous, and systematic course of

4  business" within a state is insufficient to justify an exercise of general jurisdiction over the

5  defendant.  *Daimer*, 134 S. Ct. at 761; *see also Google Inc. v. Rockstar Consortium U.S. LP.*, No.

6  13-CV-5933-CW, 2014 WL 1571807, at *5 (N.D. Cal. Apr. 17, 2014) ("Even if it is true that

7  Defendants engage in 'continuous and systematic' business in the forum state, that does not mean

8  that Defendants' presence in the forum state is so substantial that it should fairly be subject to suit

9  'on causes of action arising from dealings entirely distinct from those activities.'" (quoting

10  *Daimler*, 134 S. Ct. at 761)).  Papst's contacts with the state of California are plainly insufficient

11  to subject it to the general jurisdiction of California.

12        Merely conducting business in California from a home base in Germany is not

13  "exceptional," even when such business generates substantial revenue.  In *Daimler*, the U.S.

14  Supreme Court held that Daimler AG, the German manufacturer of Mercedes-Benz automobiles,

15  was not subject to general jurisdiction in California "despite its multiple offices, continuous

16  operations, and billions of dollars' worth of sales there."  134 S. Ct. at 772 (Sotomayor, J.,

17  concurring).  Similarly, merely "targeting" the Silicon Valley technology industry with one's

18  patent licensing business is insufficient to confer general jurisdiction.  *Rockstar*, 2014 WL

19  1571807, at *5 (holding that an exercise of general jurisdiction over a Canadian non-practicing

20  entity was not justified even though the defendant's "patent licensing business" targeted Silicon

21  Valley).  If the U.S. Supreme Court held that the German manufacturer of Mercedes-Benz

22  automobiles was not subject to general jurisdiction in California, then California certainly lacks

23  general jurisdiction over Papst, which has far more modest ties to California than the largest

24  importer of luxury vehicles to this state.  *See Daimler*, 134 S. Ct. at 752.  Thus, the Court

25  determines that this is not an "exceptional case" in which Papst's business contacts with California

26  are "so substantial" as to "essentially render it at home" in California.  *Id.* at 761 n.19.

27        Moreover, the U.S. Supreme Court has only found general jurisdiction to exist over a

28

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

1    nonresident defendant in one instance.  In *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437

2    (1952), the U.S. Supreme Court held that the defendant, a mining company based in the

3    Philippines, was subject to general jurisdiction in Ohio because the defendant's president directed

4    all of the company's activities from Ohio.  The *Daimler* Court noted that *Perkins* was an

5    "exceptional case" because the defendant's mining operations in the Philippines were halted by

6    Japanese wartime occupation of the Philippines.  134 S. Ct. at 761 n.19.  As a result, the Court

7    found that Ohio could be considered the defendant's "surrogate for the place of incorporation or

8    head office" and "principal, if temporary, place of business."  *Daimler*, 134 S. Ct. at 756 & n.8

9    (citations omitted).  Here, Plaintiffs allege no similar facts to support the proposition that

10   California can be considered Papst's surrogate place of incorporation or temporary place of

11   business.

12        Plaintiffs' reliance on *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F.

13   Supp. 2d 383 (E.D.N.Y. 2013), is misplaced.  *JetBlue* held, pre-*Daimler*, that an Illinois non-

14   practicing entity with a principal place of business in Arizona was subject to the general

15   jurisdiction of New York because it "derive[d] significant economic benefit from substantial

16   ongoing activities within [New York]."  *Id.* at 388.  The court noted that in the course of its patent

17   monetization business, the respondent entered into twenty-two licensing agreements with New

18   York companies, sent letters to thirty-four New York companies, and generated three million

19   dollars in revenue from New York companies.  *Id.* at 394.  The court noted that "[a] large out-of-

20   state company . . . that derives some ten percent of its revenue from New York . . . has sufficiently

21   aimed its activities into New York for general jurisdiction to apply."  *Id.* at 395.   In light of

22   *Daimler's* caution that even "substantial, continuous, and systematic" business within a state

23   cannot justify an exercise of general jurisdiction when the defendant is not "at-home" in that state,

24   this Court determines that *JetBlue* is inconsistent with *Daimler* and should not be followed.

25        For the foregoing reasons, this Court lacks general jurisdiction over Papst.

26   **B.    Specific Jurisdiction**

27        Where a defendant is not subject to general jurisdiction in the forum state, a district court

28
                                                          10

United States District Court
Northern District of California

may nonetheless exercise specific jurisdiction over the defendant if (1) the defendant purposefully directed its activities at the residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction does not violate fair play and substantial justice. *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011).  "[T]he plaintiff bears the burden to establish minimal contacts," and if successful, the defendant "must prove that the exercise of jurisdiction is unreasonable."  *See, e.g.*, *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).

In a declaratory judgment action for non-infringement, not all activities related to the patents-in-suit are relevant jurisdictional contacts. *Avocent Huntsville Corp. v. Aten Intern. Co.*, 552 F.3d 1324, 1332-33 (Fed. Cir. 2008).  Instead, only activities that "relate to" the *enforcement* of the patents-in-suit are relevant to the "arises out of" prong.  *Id.*  As the Federal Circuit has explained, "in the context of an action for declaratory judgment of non-infringement, invalidity, and/or unenforceability, the patentee is the defendant, and the claim asserted by the plaintiff relates to the 'wrongful restraint [by the patentee] on the free exploitation of non-infringing goods . . . [such as] the threat of an infringement suit.'" *Id.* (citing *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)).  Thus, a declaratory judgment action for non-infringement does not "arise out of" or "relate to" activities such as the defendant's manufacturing, use, offer for sale, or sale of goods in the forum.  *Avocent*, 552 F.3d at 1332-33.  Rather, the declaratory judgment "arises out of" or "relates to" the defendant's enforcement of the patents in the forum.  *Id.* at 1334.  Thus, the proper inquiry is whether any of the defendant's activities "relate to the *enforcement* or the *defense of the validity* of the [patents-in-suit]."  *Id.*

However, even if the "purposefully directed" and "arises out of" prongs are satisfied by the defendant's enforcement activities, asserting jurisdiction based on such activities must still comport with "fair play and substantial justice."  *Id.* at 1333.  Not all assertions of jurisdiction based on enforcement activities comport with "fair play and substantial justice."  *Id.*  For example, the Federal Circuit has held that based on "policy considerations unique to the patent context,"

Case Nos. 14-CV-4963-LHK; 14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

1    courts cannot assert jurisdiction on the sole basis of cease-and-desist letters sent into the state.

2    *Red Wing Shoe*, 148 F.3d at 1359-61.  The Federal Circuit has explained:

3    > Principles of fair play and substantial justice afford a patentee
     > sufficient latitude to inform others of its patent rights without
4    > subjecting itself to jurisdiction in a foreign forum.  A patentee
     > should not subject itself to personal jurisdiction in a forum solely by
5    > informing a party who happens to be located there of suspected
     > infringement.  Grounding personal jurisdiction on such contacts
6    > alone would not comport with principles of fairness.

7    *Id.* at 1360-61.

8    Similarly, "a defendant may not be subjected to personal jurisdiction if its only additional

9    activities in the forum state involve unsuccessful plans to license the patent there." *Breckenridge*,

10   444 F.3d at 1366 (citing *Hildebrand v. Steck Mfg.*, 279 F.3d 1351, 1356 (Fed. Cir. 2002)).  Nor

11   can a court exercise personal jurisdiction over a defendant "where the defendant has successfully

12   licensed the patent in the forum state, even to multiple non-exclusive licensees, but . . . has no

13   dealings with those licensees beyond the receipt of royalty income." *Breckenridge*, 444 F.3d at

14   1366 (citing *Red Wing Shoe*, 148 F.3d at 1357-58).

15   In contrast, jurisdiction is proper if it is premised on "other activities that relate to the

16   *enforcement* or the *defense of the validity* of the relevant patents." *Avocent*, 552 F.3d at 1334.

17   "Other activities" include "initiating judicial or extra-judicial patent enforcement within the forum,

18   or entering into an exclusive license agreement or other undertaking which imposes enforcement

19   obligations with a party residing or regularly doing business in the forum."  *Id.*; *see Campbell Pet*

20   *Co. v. Miale*, 542 F.3d 879, 886 (Fed. Cir. 2008) (finding jurisdiction over a patentee who enlisted

21   a third party to remove defendant's products from a trade show in the forum state); *Breckenridge,*

22   444 F.3d at 1366 (finding jurisdiction where the defendant entered into an exclusive license with a

23   company that conducted business in Florida.); *Inamed,* 249 F.3d at 1361 (finding jurisdiction over

24   a patentee who had previously granted the plaintiff an exclusive license to practice the inventions

25   claimed in the relevant patents); *Akro Corp. v. Luker*, 45 F.3d 1541, 1548–49 (Fed. Cir. 1995)

26   (finding jurisdiction over patentee who had an exclusive license with a forum resident, where the

27   license agreement also "oblige[d] [the patentee] 'to defend and pursue any infringement against'

28

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

*United States District Court*
*Northern District of California*

1    the [relevant] patent").

2         Plaintiffs allege that Papst is subject to specific jurisdiction for several reasons: (1) Papst's

3    letters to Altera and Xilinx (2) Papst's in-person meetings with Altera and Xilinx in California, (3)

4    Papst's "list of patent enforcement targets," (4) Papst's obligations which Papst assumed when

5    purchasing the patents-in-suit from FTE, (5) Papst's retention of California attorneys to pay PTO

6    maintenance fees for the patents-in-suit, (6) Papst's retention of Mr. Ellwanger, a Texas-based

7    lawyer who is licensed in California, to represent Papst in licensing negotiations, (7) Papst's

8    alleged threatening of Altera customers, and (8) Papst's prior patent infringement lawsuits in

9    California involving other patents.  The Court addresses each in turn, and for the reasons

10   explained below determines that these contacts as a whole are insufficient to support an exercise

11   of specific jurisdiction over Papst in this case.

12              **1.     Papst's letters to Altera and Xilinx**

13        While Plaintiffs characterize Papst's letters as "patent enforcement letters" directed to the

14   forum as part of Papst's enforcement efforts, the letters themselves are nothing more than cease-

15   and-desist letters.  Altera admits that "Altera received a letter from Papst asserting that Altera

16   needed to *take a license* to two patents [owned by] Papst."  Altera Opp. 3 (emphasis added).

17   Xilinx admits that "[i]n separate January and April 2014 letters, Papst Licensing accused Xilinx

18   and Altera of infringing the patents-in-suit and urged Xilinx and Altera to *take a license*."  Xilinx

19   Opp. 5 (emphasis added).  Because under well-established Federal Circuit precedent, cease-and-

20   desist letters are insufficient to confer specific jurisdiction, this Court cannot assert specific

21   jurisdiction over Papst unless Papst has sufficient "other activities" in the forum.  *Breckenridge*,

22   444 F.3d at 1363; *Red Wing Shoe*, 148 F.3d at 1360-61 ("Principles of fair play and substantial

23   justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting

24   itself to jurisdiction in a foreign forum.").  Indeed, in *Avocent*, the Federal Circuit made clear that

25   "letters threatening suit for patent infringement sent to the alleged infringer *by themselves* do not

26   suffice to create personal jurisdiction."  552 F.3d at 1333 (internal quotation omitted).

27   Accordingly, Papst's letters are insufficient by themselves to create personal jurisdiction.

28
13

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

*United States District Court*
*Northern District of California*

### 2.    Papst's in-person meetings with Altera and Xilinx in California

Papst's meetings with Altera and Xilinx in California are similarly insufficient to support an exercise of jurisdiction over Papst because they are "mere attempts to license" the patents-in-suit. *Breckenridge*, 444 F.3d at 1366.  The Federal Circuit has held that "a defendant may not be subjected to personal jurisdiction if its only additional activities in the forum state involve unsuccessful attempts to license the patent there." *Id.* (citing *Hildebrand*, 279 F.3d at 1356).  In *Hildebrand*, the Federal Circuit held that an Ohio district court could not exercise personal jurisdiction over the defendant, a Colorado resident, on the basis of cease-and-desist letters and attempts to negotiate a license agreement. 279 F.3d at 1356.  The defendant in *Hildebrand*, a Colorado resident, sent cease-and-desist letters to corporations in Ohio.  *Id.*  In addition, "as part of an offer to do business," the defendant mailed a sample set of products to the plaintiff.  *Id.*  The court found that because the product was not injected into the forum for any purpose other than to negotiate a license, it does not constitute a separate contact and did not create a constitutionally adequate basis for personal jurisdiction.  *Id.*  Because all of Hildebrand's contacts with the forum "were for the purpose of warning against infringement or negotiating license agreements, and he lacked a binding obligation in the forum," the Federal Circuit held that "[t]he accumulation of Hildebrand's contacts with Ohio do not create a constitutionally adequate basis for personal jurisdiction." *Id.*

In the instant case, Papst's meetings in California are not "for any purpose other than to negotiate a license," and thus serve as inadequate bases for this Court to exercise jurisdiction. While Plaintiffs characterize the six in-person meetings as "patent enforcement meetings," Plaintiffs concede that the meetings involved nothing more than accusations of infringement and attempts to license the patents-in-suit.  Altera Opp. 7; Xilinx Opp. 5.  Altera admits that the "*sole purpose of Papst's in-person meetings was to present a potential infringement case and negotiate the terms of a license agreement.*"  Altera Opp. 7 (emphasis added).  Xilinx concedes that "[Papst representatives] traveled to California to meet separately with Xilinx and Altera *in attempt to license the patents-in-suit.*"  Xilinx Opp. 5 (emphasis added).  Because Papst's in-person meetings

14

1    are nothing more than "mere attempts to license the patent at issue," *Breckenridge*, 444 F.3d at

2    1366, Papst's in-person meetings do not warrant a finding of specific jurisdiction.

3    Further, no Federal Circuit case has found that in-person licensing negotiations in the

4    forum state are sufficient to vest that state with specific jurisdiction over a patentee.  While the

5    Federal Circuit has not expressly said so,[2] the Federal Circuit's decision in *Autogenomics, Inc. v.*

6    *Oxford Gene Technology Ltd.*, 566 F.3d 1012 (2009), suggests that in-person licensing

7    negotiations cannot justify an exercise of specific jurisdiction.  In *Autogenomics*, two

8    representatives of the defendant patentee, Oxford, flew to California to conduct licensing

9    negotiations with the plaintiff, Autogenomics.  *Id.* at 1015.  The parties failed to agree on license

10   terms.  *Id.*  The district court concluded that "in-person negotiations between Oxford and

11   Autogenomics were 'clearly analogous to the cease-and-desist' communications at issue in the

12   bevy of cases on this subject."  *Id.* at 1019 (citation omitted).  On appeal, Autogenomics conceded

13   that after the Federal Circuit's decision in *Avocent*, the in-person licensing negotiations were no

14   longer relevant contacts for the specific jurisdiction inquiry.  *Id.* at 1021 ("Autogenomics had

15   originally argued that Oxford had nine types of contacts with California. In its supplemental brief,

16   Autogenomics concedes that our 'holding in *Avocent* eliminated seven of those nine types of

17   contacts . . . explain[ing] that only the [joint venture contract and the licenses] were still relevant

18   to the specific jurisdiction inquiry.").

19   Courts in this district have been more explicit in finding that in-person licensing

20   negotiations do not constitute "enforcement activities" sufficient to justify an exercise of specific

21

22   [2] Papst contends that in *Radio Systems*, the Federal Circuit held that "multiple licensing meetings
     in forum state insufficient [sic] to establish specific jurisdiction."  Papst MTD-Xilinx 8.  However,

23   the in-person meetings in *Radio Systems* did not involve *licensing* negotiations, but rather, the
     defendant inventor's attempts to commercialize his patented product.  *See* 738 F.3d at 788.  In

24   *Avocent*, the Federal Circuit held that "the defendant patentee's own commercialization activity
     does not" sustain "specific personal jurisdiction in a declaratory judgment action."  *Avocent*, 552

25   F.3d at 1335.  "What the patentee makes, uses, offers to sell, sells, or imports is of no real
     relevance to the enforcement or defense of a patent, because the federal patent laws do not create

26   any affirmative right to make, use, or sell anything."  *Id.* (citations and internal quotations
     omitted).  Thus, *Radio Systems* simply held, consistent with *Avocent*, that attempts to

27   commercialize one's patented product is not "enforcement activity" that can justify a finding of
     specific jurisdiction.

28
                                                      15
     Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
     ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

1  jurisdiction.  In *Square, Inc. v. Morales*, No. 13-CV-1431-SBA, 2013 WL 6199281 (N.D. Cal.

2  Nov. 27, 2013), the court refused to exercise specific jurisdiction over the defendant, Morales,

3  despite the fact that Morales traveled from Texas to San Francisco to threaten Square with

4  infringement and to attempt to negotiate a deal.  *Id.* at *2.  The Court found that Morales' attempt

5  to meet with Square's legal counsel in San Francisco was "for the purpose of informing Square of

6  its infringing activity and/or negotiating a business agreement with Square," and therefore

7  insufficient to satisfy the requirements of due process.  *Id.* at *5.  In the instant case, Papst,

8  similarly, traveled to California to inform Plaintiffs of Plaintiffs' infringing activities and to

9  negotiate a license with Plaintiffs relating to the patents-in-suit.  Altera Opp. 6.

10        Here, as in *Autogenomics* and *Square*, the in-person meetings that transpired between the

11  parties in California were analogous to cease-and-desist communications and failed license

12  negotiations that the Federal Circuit has held to be insufficient to vest the Court with specific

13  jurisdiction over a declaratory judgment defendant.  Thus, this Court finds that an exercise of

14  specific jurisdiction is not justified on the basis of Papst's failed in-state licensing negotiations.

15        **3.    Papst's "list of patent enforcement targets"**

16        Plaintiffs allege that Papst's list of "license targets" constitutes "enforcement activities,"

17  although Plaintiffs do not contend that Papst has contacted any of these "targets," much less

18  actually pursued licensing agreements with them. *See* Xilinx Opp. 16.

19        The Court determines that maintaining a list of license targets is simply an activity related

20  to Papst's attempts to license the patents-in-suit.  Such activity, as explained above, is insufficient

21  under Federal Circuit case law to support an exercise of specific jurisdiction. *Breckenridge*, 444

22  F.3d at 1366 ("a defendant may not be subjected to personal jurisdiction if its only additional

23  activities in the forum state involve unsuccessful plans to license the patent there").  If actual

24  contact with targets, cease-and-desist letters, and in-person licensing negotiations cannot justify an

25  exercise of specific jurisdiction, the mere act of maintaining a list of potential license targets,

26  without more, cannot.  *See Breckenridge*, 444 F.3d at 1366 (noting that "the crux of the due

27  process inquiry should focus first on whether the defendant has had contact with parties in the

28

16

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

forum state beyond the sending of cease-and-desist letters or mere attempts to license the patent at issue there").

Thus, Papst's maintenance of a list of license targets is simply in furtherance of Papst's attempts to license the patents-in-suit and is insufficient to subject Papst to the jurisdiction of this Court.

### 4. Papst's obligations which Papst assumed when purchasing the patents-in-suit from FTE

As set forth in section I.A.2, Papst acquired the patents-in-suit from FTE, who had acquired the patents-in-suit five days earlier from Rambus. Xilinx Opp. 6. Under the purchase agreement between Papst and FTE ("Papst Agreement"), Papst agreed to assume all of FTE's rights and obligations under FTE's purchase agreement with Rambus ("Rambus Agreement"). *Id.*

Plaintiffs argue that Papst's obligations under the Rambus Agreement are enough to confer specific jurisdiction over Papst. Xilinx Opp. 15. Specifically, Plaintiffs contend that Rambus's "obligation" to support Papst's efforts to monetize the patents-in-suit creates a continuing patent-related obligation between Papst and a California resident sufficient to satisfy due process. *Id.* Plaintiffs further argue that the California choice of law and forum selection provisions of the Rambus Agreement, which Papst accepted when Papst purchased the patents-in-suit from FTE, are sufficient to support an exercise of specific jurisdiction over Papst. *Id.* As explained below, the Court disagrees.

#### a. Non-exclusive vs. exclusive license

First, the Rambus Agreement grants Rambus a non-exclusive, as opposed to exclusive, license. The Federal Circuit has drawn a distinction between a licensor's relationship to an exclusive licensee, on the one hand, and a licensor's relationship to a non-exclusive licensee on the other. *See, e.g.*, *Akro*, 45 F.3d at 1546 (holding that jurisdiction is proper where the defendant grants a licensee in the forum an *exclusive* license that includes the right to litigate infringement claims). The mere grant of a non-exclusive license to an in-state licensee does not subject the licensor to personal jurisdiction in that state, while the grant of an exclusive license may if it

17

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

1    imposes enforcement obligations.  *See Breckenridge*, 444 F.3d at 1366 ("the defendant is subject

2    to personal jurisdiction in the forum state by virtue of its relationship with its exclusive forum

3    state licensee *if* the license agreement, for example, requires the defendant-licensor, and grants the

4    licensee the right, to litigate infringement claims." (emphasis added)).  Here, the fact that Rambus,

5    a California resident, is a non-exclusive licensee is insufficient to create personal jurisdiction over

6    Papst.

7                              **b.        Continuing obligations**

8            Second, for a licensor to be subject to personal jurisdiction in the forum of the licensee,

9    "the license agreement [must] contemplate a relationship beyond royalty or cross-licensing

10   payment, such as granting both parties the right to litigate infringement cases[,] granting the

11   licensor the right to exercise control over the licensee's sales or marketing activities," *id.*, or

12   "impos[ing] enforcement obligations with a party residing or regularly doing business in the

13   forum." *Avocent*, 552 F.3d at 1334.  The license agreement must create continuing obligations

14   between the defendant and the forum state.  *Id.*

15           In the instant case, the "Seller's Continued Assistance and Reimbursement" clause "relates

16   to" the enforcement and defense of the patent.  The clause states that in the event that Papst

17   requests Rambus's expertise during interference, priority, infringement, or other court

18   proceedings, and Rambus performs those services, Papst must compensate Rambus for reasonable

19   costs incurred.  Nonetheless, this Court finds that the "Seller's Continued Assistance and

20   Reimbursement" clause is an insufficient basis for this Court to exercise jurisdiction over Papst

21   because the agreement neither establishes any "continuing obligations" between Papst and

22   Rambus nor "imposes enforcement obligations with a party residing or regularly doing business in

23   the forum." *Avocent*, 552 F.3d at 1334.  Indeed, the clause expressly states that "nothing set forth

24   in this Agreement shall create an obligation for [Rambus] to provide assistance or otherwise

25   perform services." Xilinx Opp. 15.  Further, nothing in the Rambus Agreement (a) compels Papst

26   to take any affirmative action in California, (b) gives the California licensees any "enforcement

27   rights over the patents," or (c) grants Papst any right to exercise control over Rambus's business

28                                              18

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

**Appx18**

1  activities.

c.    **Choice of law and forum selection clause**

3      Finally, the Court is not persuaded by Plaintiffs' argument that the choice of law and

4  forum selection clause in the Rambus Agreement necessitates a different conclusion.  Xilinx Opp.

5  15.  This clause of the Rambus Agreement provides that "This Agreement shall be governed

6  by . . . the laws of California" and that "a court of competent jurisdiction located in Santa Clara,

7  California shall have sole and exclusive jurisdiction with respect to any dispute or controversy

8  arising out of or relating to this Agreement."  Xilinx Opp., Exhibit 29 at § 11.5.  This clause does

9  not apply to the instant declaratory judgment actions for at least two reasons.

10      First, this clause governs disputes arising out of or relating to the purchase agreement

11  between Rambus and FTE, and not expressly about enforcement actions or declaratory judgment

12  actions regarding the patents-in-suit.  "Even with a more permissive view of the 'relates to'

13  requirement when it comes to the 'other activities' that help establish minimum contacts, the

14  Federal Circuit has held that a forum-selection clause does not convey personal jurisdiction over a

15  defendant unless the plaintiff's claims arise out of the agreement containing the clause."

16  *Paramount Pictures Corp. v. Nissim Corp.*, No. 2:14-CV-04624-ODW, 2014 WL 5528455, at *6

17  (C.D. Cal. Nov. 3, 2014) (finding that California choice of forum provisions in a non-disclosure

18  and license agreement with a third party did not help establish minimum contacts for the purposes

19  of personal jurisdiction).  In the instant case, Plaintiffs' claims arise out of Plaintiffs' allegedly

20  infringing activities and the validity of the patents-in-suit, and thus the California choice of law

21  and forum selection clauses do not help establish minimum contacts for the purposes of personal

22  jurisdiction.  *Paramount*, 2014 WL 5528455, at *6.  The Rambus Agreement, at best, shows

23  Papst's intent to be subject to California courts should the Rambus Agreement be violated, not for

24  subsequent declaratory judgment actions concerning the infringement or validity of the patents-in-

25  suit.  *See Big Lots Stores, Inc. v. Sorensen Research & Development Trust*, No. 08-CV-506, 2009

26  WL 4547599, at *5 (S. D. Ohio Dec. 2, 2009) (holding no personal jurisdiction despite the

27  presence of a forum selection clause in a non-exclusive license agreement because "the agreement

28

19

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

1    . . . merely shows Defendant's intent to be subject to Ohio courts should *that specific agreement*

2    be violated; the agreement shows no intent on the part of Defendant to be subjected to Ohio courts

3    when responding to potential infringement by other entities *that are not parties* to that

4    agreement").  Moreover, Plaintiffs are not parties to the Rambus Agreement.  *Id.*

5            Second, unlike the Rambus Agreement, the Papst Agreement has a choice of law and

6    forum selection clause in favor of Texas, not California.  Specifically, any disputes regarding the

7    Papst Agreement "shall be governed by the substantive law of the State of Texas, USA, exclusive

8    of its choice of law rules," and "[a] court of competent jurisdiction located in Marshall, State of

9    Texas, USA shall have sole and exclusive jurisdiction in any dispute or controversy arising out of

10   or relating to this Agreement."  Altera Opp., Exhibit K at PAPST-JURIS-0334.

11           Most significantly, the Court has not found, and Plaintiffs do not cite, any authority finding

12   specific jurisdiction in a declaratory judgment action based on a choice of law and forum selection

13   clause in an assignment within a patent's chain of title.  Papst's purchase of the patents-in-suit,

14   where a prior assignment of the patents-in-suit contained a choice of law and forum selection

15   clause in favor of California, does not constitute the type of purposeful availment sufficient to vest

16   California with specific jurisdiction over Papst for every declaratory judgment action involving

17   the patents-in-suit.

18           The Court thus finds that the Rambus Agreement is an insufficient basis for exercising

19   jurisdiction over Papst.

20        **5.    Papst's retention of California attorneys to pay PTO maintenance fees
                  for the patents-in-suit**

22           Plaintiffs also argue that specific jurisdiction may be premised on Papst's retention of

23   California patent attorneys to maintain the patents-in-suit.  Xilinx Opp. 15-16.  The simple act of

24   retaining a patent attorney based in California to make the three[3] maintenance fee payments during

25   the twenty-year patent term are insufficient contacts to vest California with personal jurisdiction

26

27   _____
     [3] Maintenance fees on a utility patent are paid to maintain a patent in force beyond 4, 8, and 12
     years after the date of grant.  *See* 37 C.F.R. § 1.362.

28                                                    20

1   over a declaratory judgment action challenging the validity of that patent.  Plaintiffs do not allege

2   that the patent attorneys are involved in enforcing the patents.  Rather, Plaintiffs merely contend

3   that the patent attorneys pay maintenance fees to the PTO.  *Id.*  This Court knows of no authority,

4   nor does Plaintiff cite any authority, that premises specific jurisdiction on such insubstantial

5   contacts.[4]  Thus, the Court finds that Papst's use of California attorneys to pay PTO maintenance

6   fees is an insufficient basis for personal jurisdiction.

7               **6.       Papst's retention of Mr. Ellwanger**

8               Plaintiffs also allege that Papst hired Mr. Ellwanger, a Texas-based, California-licensed

9   counsel, to "represent it in its extrajudicial patent enforcement activities directed at California."

10  Xilinx Opp. 16.

11              Mr. Ellwanger is not a resident of California, nor does he keep an office or home in

12  California.  Papst Reply-Xilinx 14.  Instead, Mr. Ellwanger is based in Texas.  Plaintiffs' theory

13  would subject Papst to the jurisdiction of any state in which Papst's lawyers are licensed.  Papst's

14  relationship with Mr. Ellwanger is not an "undertaking which imposes enforcement obligations

15  with a party residing or regularly doing business in the forum."  *Avocent*, 552 F.3d at 1334.  The

16  fact that a Texas lawyer, who happens to be licensed in California, attempted to negotiate a patent

17  license on behalf of a German corporation does not constitute sufficient contacts attributable to

18  Papst.  The Court thus concludes that Mr. Ellwanger's presence in licensing negotiations is

19  insufficient to justify an exercise of jurisdiction over Papst.

20              Therefore, this Court finds that Papst's retention of Mr. Ellwanger is not a sufficient basis

21  for jurisdiction.

22              **7.       Papst's alleged threating of Altera customers**

23              Altera also alleges that Papst "interfere[d] with [Altera's] business relationships" by

24

25  _____

26  [4] The only authority Xilinx cites is *Calix Networks, Inc. v. Wi-LAN, Inc.*, No. 09-CV-6038-CRB,
    2010 WL 3515759 (N.D. Cal. Sept. 8, 2010), a motion to compel discovery case.  In *Calix*
    *Networks*, the court's decision to compel discovery was also premised on the likelihood that the
27  defendant engaged in "enforcement" activity related to the patents-in-suit.  *Id.* at *6.

28                                          21

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

1    threatening Altera's customers.  Altera Opp. 3, 8.  Altera analogizes to *Campbell Pet Co.*, where

2    the Federal Circuit found that specific jurisdiction was justified when the defendant engaged in "a

3    form of self-help patent enforcement" by enlisting a third party to remove the plaintiff and its

4    products from a sales convention.  *Radio Sys.*, 638 F.3d at 791 (citing *Campbell Pet Co.*, 542 F.3d

5    at 887).  This Court rejects Altera's argument because Altera has pointed to no evidence that Papst

6    has threatened Altera's customers.  Indeed, Altera readily admits that it "does not know whether

7    Papst contacted any of Altera's customers."  Altera Opp. 8.  Papst denies Altera's allegations.

8    Papst Reply-Altera 6.  "Although we must resolve factual conflicts in [Plaintiffs'] favor, [they are]

9    entitled to only those inferences that are reasonable."  *Autogenomics*, 566 F.3d at 1018.  This

10   Court finds Altera's allegations unreasonable because if Altera's customers were actually

11   threatened by Papst, Altera would have had access to this evidence and could have submitted it to

12   the Court for consideration.  Altera did not.  Accordingly, Altera's bald allegations that Papst may

13   have threatened Altera's customers are insufficient to vest this Court with personal jurisdiction

14   over Papst.

**8.    Papst's prior patent infringement lawsuits in California**

16       Altera also alleges that Papst, through its past negotiations and lawsuits regarding different

17   patents, has "engaged in judicial enforcement activities in California multiple times before."

18   Altera Opp. 7.  However, Papst's enforcement activities regarding other patents are irrelevant to

19   the question at hand: whether this Court can assert specific jurisdiction over Papst based on its

20   efforts to enforce the patents-in-suit. Plaintiffs' case does not arise out of Papst's enforcement of

21   *other* patents.  The Federal Circuit has "consistently" made clear that the "other activities" for

22   purposes of personal jurisdiction must relate to "the relevant patents."  *Avocent*, 552 F.3d at 1334.

23   Papst's litigations in this state involving other patents are irrelevant for purposes of specific

24   jurisdiction.

**9.    Summary**

26       In sum, Plaintiffs have failed to meet their burden to make a prima facie showing of

27   relevant jurisdictional facts to withstand a motion to dismiss.  *Mavrix*, 647 F.3d at 1223.  Papst

28
Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

1  certainly has many connections to the state of California.  For example, Papst purchased the

2  patents-in-suit, which were invented by individuals residing in California while working for

3  Rambus in California.  Papst then pursued Xilinx and Altera, two companies headquartered in

4  California.  Papst did so by sending multiple letters to Altera and Xilinx, visiting the California

5  offices of Altera and Xilinx on several occasions, alleging that the products made by Altera and

6  Xilinx infringe the patents-in-suit, and demanding that Altera and Xilinx pay for a license to the

7  patents-in-suit or else face patent litigation in the forum of Papst's choosing.  Meanwhile, Papst

8  continues to earn millions each year from California companies through royalties on other patents.

9  In the past, Papst has called on the courts of California to litigate patent infringement lawsuits

10 against thirteen different California technology companies.  Nonetheless, the Court determines

11 that these facts are either related solely to Papst's attempts to license the patents, which the

12 Federal Circuit has held insufficient, or according to Federal Circuit law are irrelevant to the

13 parties' instant dispute.  Accordingly, even when considered as a whole these connections are

14 insufficient to vest this Court with specific jurisdiction over Papst.

15       Plaintiffs contend that by refusing to exercise personal jurisdiction in this case, "foreign

16 non-practicing entities would be free to repeatedly and aggressively enforce their patents against

17 California companies, leaving California residents with no recourse to seek a declaratory judgment

18 in their home forums."  Xilinx Opp. 1.  However, by statute, foreign patentees are subject to the

19 jurisdiction of the Eastern District of Virginia, 35 U.S.C. § 293, and Papst has consented to the

20 jurisdiction of Delaware—the state of incorporation for both Plaintiffs.  Although Plaintiffs prefer

21 a declaratory judgment action in their home forum, "[d]ue process limits on the State's

22 adjudicative authority principally protect the liberty of the nonresident defendant—not the

23 convenience of plaintiffs or third parties."  *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).  As this

24 Court must follow Federal Circuit precedent, this Court declines to assert personal jurisdiction

25 over Papst.

26       **C.     Altera's Request for Additional Discovery**

27       Altera requests that this Court grant jurisdictional discovery into Papst's prior enforcement

28
                                          23
   Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
   ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

1    activities in California in the event that this Court finds that it lacks personal jurisdiction over

2    Papst. Altera Opp. 11-12. Papst responds that jurisdictional discovery is not warranted here,

3    because Papst already presented its corporate representative for deposition in New York, and that

4    even with this discovery Plaintiffs have been unable to meet their burden to establish a prima facie

5    case of personal jurisdiction over Papst. Papst Reply-Altera 11.

6         "Discovery may appropriately be granted where pertinent facts bearing on the question of

7    jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data

8    Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 n.1 (9th Cir. 1977). However, "[i]n

9    granting discovery, the trial court is vested with broad discretion." *Id.* "[A] trial court may deny

10   jurisdictional discovery when it is clear that further discovery would not demonstrate facts

11   sufficient to constitute a basis of jurisdiction, or where the request for discovery is based on little

12   more than a hunch that it might yield jurisdictionally relevant facts[.]" *Nuance*, 626 F.3d at 1235-

13   36.

14        Because Altera has failed to make the prima facie showing of jurisdiction over Papst even

15   after Papst voluntarily provided jurisdictional discovery, the Court determines that any further

16   jurisdictional discovery would be a waste of resources for both the parties and for this Court.

17   Accordingly, the Court concludes that Altera's claim that it will discover jurisdictionally relevant

18   facts if given another shot at more discovery is based on "little more than a hunch." *Nuance*, 626

19   F.3d at 1235-36. Thus, the Court exercises its discretion to decline Altera's request for additional

20   discovery.

21        **D.    Papst's Motion to Transfer Venue**

22        Even where this Court lacks personal jurisdiction over the defendant, this Court may use

23   its authority under 28 U.S.C. § 1406(a) to transfer this case to another district. *Goldlawr, Inc. v.*

24   *Heiman*, 369 U.S. 463, 466-67 (1962). Under 28 U.S.C. § 1406(a), if the court determines that

25   personal jurisdiction is lacking or if venue is improper, the court must either dismiss the action or,

26   if it is in the interests of justice, transfer the case to a district or division in which it could have

27   been brought. *Goldlawr*, 369 U.S. at 466 ("The language of § 1406(a) is amply broad enough to

28

24

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

1  authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to

2  venue, whether the court in which it was filed had personal jurisdiction over the defendants or

3  not."); *see also* 28 U.S.C. §1406(a).

4      In the instant case, Papst has sued Plaintiffs in the United States District Court for the

5  District of Delaware for their alleged infringement of the patents-in-suit.  *Papst Licensing GMBH*

6  *& Co. KG v. Altera Corp.*, No. 15-CV-162-LPS-CJB (D. Del. Feb. 17, 2015); *Papst Licensing*

7  *GMBH & Co. KG v. Xilinx, Inc.*, No. 14-CV-1376-LPS-CJB (D. Del. Nov. 7, 2014).  The interests

8  of judicial efficiency would be furthered by Plaintiffs pursuing their claims for declaratory relief

9  on the patents-in-suit in those already-pending actions, rather than transferring their claims in

10 these actions to Delaware for consolidation.  Moreover, Plaintiffs have not asked this Court to

11 transfer these actions to Delaware if the Court determines that the Court lacks personal jurisdiction

12 over Papst in the instant case.  Accordingly, rather than transferring Plaintiffs' declaratory

13 judgment actions to the District of Delaware, the Court will instead dismiss them for lack of

14 personal jurisdiction.

15 **IV.    CONCLUSION**

16     For the foregoing reasons, the Court hereby DENIES Altera's request for additional

17 discovery and GRANTS Papst's Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction.

18 The Clerk shall close the files.

19 **IT IS SO ORDERED.**

20

21 Dated: July 9, 2015

       *Lucy H. Koh*
       _____

22                                        LUCY H. KOH
                                          United States District Judge

23

24

25

26

27

28

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

## <u>DECLARATION OF AUTHORITY</u>

I, Matthew J. Silveira, a member of the Bar of this Court, declare that I have

been authorized to sign the foregoing APPELLANTS' OPENING BRIEF and

CERTIFICATES OF INTEREST on behalf of all counsel for Plaintiffs-Appellants,

pursuant to Fed. Cir. R. 47.3(d).

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that

the foregoing is true and correct.


Executed:  December 14, 2015

/s/ Matthew J. Silveira
Matthew J. Silveira
*Attorney for Plaintiff-Appellant*
*Xilinx, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that the attached brief is proportionally spaced, using a proportionally-spaced typeface of 14 points and—exclusive of the portions of the brief exempted under Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b)—contains 10,280 words.  As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned has relied on the word count of the word-processing system used to prepare the attached brief in making this certification.


Dated:  December 14, 2015

/s/ Matthew J. Silveira
Matthew J. Silveira
*Attorney for Plaintiff-Appellant*
*Xilinx, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 14, 2015, I served the foregoing brief on all registered counsel of record by electronic means (CM/ECF).


/s/ Matthew J. Silveira
Matthew J. Silveira
*Attorney for Plaintiff-Appellant*
*Xilinx, Inc.*