Nos. 2015-1914, -1919

# United States Court of Appeals
# for the Federal Circuit

ALTERA CORPORATION, XILINX, INC.,
*Plaintiffs-Appellants*,

v.

PAPST LICENSING GMBH & CO. KG,
*Defendant-Appellee*.

Appeals from the United States District Court for the Northern
District of California in Nos. 5:14-cv-04794 and 5:14-cv-
04963, Judge Lucy H. Koh

**BRIEF OF THIRTY-FOUR LAW PROFESSORS AS *AMICI CURIAE*
IN SUPPORT OF APPELLANTS**

Harrison J. Frahn IV
Matthew K. Telford
*Counsel for Amici Curiae*
Simpson Thacher & Bartlett LLP
2475 Hanover Street
Palo Alto, California 94304
Telephone: (650) 251-5000

December 21, 2015

## <u>CERTIFICATE OF INTEREST</u>

Pursuant to Federal Circuit Rules 28(a)(1) and 47.4(a), counsel for *amici curiae* state the following:

1. The full names of every party or *amicus* represented by us are:

>Debra Lyn Bassett
>Anya Bernstein
>Jeremy W. Bock
>Patrick J. Borchers
>Michael J. Burstein
>Michael A. Carrier
>Bernard Chao
>Colleen V. Chien
>Jorge L. Contreras
>Scott Dodson
>Joshua A. Douglas
>Catherine Ross Dunham
>Katherine Florey
>Roger Allan Ford
>Leah Chan Grinvald
>Paul R. Gugliuzza
>Timothy R. Holbrook
>William Hubbard
>Sapna Kumar
>Megan M. La Belle
>Mark A. Lemley
>David I. Levine
>Brian J. Love
>Joseph Scott Miller
>Patricia W. Moore
>Ira Steven Nathenson
>Xuan-Thao Nguyen
>Philip A. Pucillo
>Greg Reilly
>Charles W. Rhodes
>Cassandra Burke Robertson
>Christopher B. Seaman

Gregory Sisk
Howard M. Wasserman

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

Not applicable

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or *amici curiae* represented by us is:

None

4. The names of all law firms and the partners or associates that appeared for any of the parties or *amici* now represented by us in the trial court or agency or in a prior proceeding in this case or are expected to appear in this Court are:

Harrison J. Frahn IV and Matthew K. Telford of Simpson Thacher & Bartlett LLP

Dated: December 21, 2015      /s/ *Harrison J. Frahn IV*
                             Harrison J. Frahn IV

                             *Counsel for Amici Curiae*

# <u>TABLE OF CONTENTS</u>

**Page**

CERTIFICATE OF INTEREST ................................................................ i

TABLE OF CONTENTS .................................................................... iii

TABLE OF AUTHORITIES .................................................................. iv

INTEREST OF *AMICI CURIAE* ............................................................ 1

INTRODUCTION ............................................................................ 2

ARGUMENT ................................................................................. 3

    I.    *Red Wing Shoe*'s Bright-Line Rule Conflicts with Controlling Supreme Court Precedent and Is Inconsistent with This Court's Own Case Law ......................................... 3

    II.    Public Policy Supports the Exercise of Personal Jurisdiction Based on Licensing Efforts ................................................. 10

CONCLUSION ............................................................................. 16

APPENDIX A .............................................................................. 17

CERTIFICATE OF COMPLIANCE ......................................................... 20

CERTIFICATE OF SERVICE .............................................................. 21

**TABLE OF AUTHORITIES**

**Page(s)**

## CASES

*Asahi Metal Indus. Co. v. Superior Court*,
   480 U.S. 102 (1987) ................................................................. 6

*Autogenomics, Inc., v. Oxford Gene Tech. Ltd.*,
   566 F.3d 1012 (Fed. Cir. 2009) ........................................... 5, 10

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
   552 F.3d 1324 (Fed. Cir. 2008) ............................... 2, 4, 5, 9–10

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
   21 F.3d 1558 (Fed. Cir. 1994) ................................................ 8

*Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*,
   402 U.S. 313 (1971) .......................................................... 10–11

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ...................................................... 2, 3, 4, 6, 7

*Cardinal Chem. Co. v. Morton Int'l., Inc.*,
   508 U.S. 83 (1993) ............................................................... 10

*F.T.C. v. Actavis, Inc.*,
   133 S. Ct. 2223 (2013) ..................................................... 15–16

*In re TC Heartland, LLC*,
   No. 16-105 (Fed. Cir. filed Oct. 23, 2015) ............................. 8

*InterDigital Commc'ns, LLC v. ITC*,
   690 F.3d 1318 (Fed. Cir. 2012) .............................................. 9

*Kulko v. Superior Court*,
   436 U.S. 84 (1978) .............................................................. 2, 4

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) .............................................................. 11

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
   134 S. Ct. 843 (2014) ........................................................... 11

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
   148 F.3d 1355 (Fed. Cir. 1998) .................................... passim

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980).......................................................................3, 5–6, 7

## STATUTES

19 U.S.C. § 1337(a)(2)................................................................... 9

19 U.S.C. § 1337(a)(3)................................................................... 9

35 U.S.C. § 311(b).........................................................................12

## OTHER AUTHORITIES

Donald L. Doernberg & Michael B. Mushlin, *The Trojan Horse: How the
    Declaratory Judgment Act Created a Cause of Action and Expanded
    Federal Jurisdiction While the Supreme Court Wasn't Looking*,
    36 UCLA L. Rev. 529 (1989) ..........................................................13, 14

Lisa A. Dolak, *Declaratory Judgment Jurisdiction in Patent Cases:
    Restoring the Balance Between the Patentee and the Accused Infringer*,
    38 B.C. L. Rev. 903 (1997).................................................................13

Jeanne C. Fromer, *Patentography*,
    85 N.Y.U. L. Rev. 1444 (2010).................................................... 8

Leah Chan Grinvald, *Policing the Cease-and-Desist Letter*,
    49 U.S.F. L. Rev. 411 (2015).............................................................15

Paul R. Gugliuzza, *Patent Litigation Reform: The Courts, Congress,
    and the Federal Rules of Civil Procedure*,
    95 B.U. L. Rev. 279 (2015)................................................................12

Paul R. Gugliuzza, *Patent Trolls and Preemption*,
    101 Va. L. Rev. 1579 (2015)..............................................................15

H.R. Rep. No. 112-98,
    at 39–40 (2011)................................................................................11

Megan M. La Belle, *Against Settlement of (Some) Patent Cases*,
    67 Vand. L. Rev. 375, 429–30 (2014) .......................................14

Megan M. La Belle, *Patent Litigation, Personal Jurisdiction, and the Public
    Good*,
    18 Geo. Mason L. Rev. 43, 90–97 (2010) ................................. 7

Mark A. Lemley & A. Douglas Melamed, *Missing the Forest for the Trolls*,
    113 Colum. L. Rev. 2117 (2013)............................................................15

Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*,
  21 Fed. Cir. B.J. 539 (2011–2012) ..........................................................11

Kimberly A. Moore, *Forum Shopping in Patent Cases: Does Geographic Choice Affect Innovation?*,
  79 N.C. L. Rev. 889 (2001)...................................................................... 8

Kimberly A. Moore, Timothy R. Holbrook & John F. Murphy,
  *Patent Litigation and Strategy* 52 (4th ed. 2013).....................................14

Charles W. Rhodes, *Liberty, Substantive Due Process, and Personal Jurisdiction*,
  82 Tul. L. Rev. 567 (2007)...................................................................... 6

Amelia Smith Rinehart, *Patent Cases and Public Controversies*,
  89 Notre Dame L. Rev. 361 (2013) ..........................................................14

## INTEREST OF *AMICI CURIAE*

The *amici curiae* are law professors who teach and write on civil procedure and/or patent law and policy.[1]  As such, *amici* are interested in the effective functioning of the courts and the patent system in general.  *Amici* believe that this Court's rigid rule restricting personal jurisdiction in patent declaratory judgment actions both flouts Supreme Court precedent and frustrates the public policy of clearing invalid patents.  Although *amici* hold different views on other aspects of modern patent law and policy, they are united in their professional opinion that this Court should overturn its inflexible jurisdictional rule.

*Amici* have no stake in the parties or in the outcome of the case.  A complete list of *amici* appears at Appendix A.

---

[1]  No party's counsel authored this brief in whole or part; no party or party's counsel contributed money intended to fund preparing or submitting the brief; and no person other than amici, their members, or counsel contributed money intended to fund preparing or submitting the brief.  Fed. R. App. P. 29(c)(5).  Additionally, all parties have consented to the filing of this brief.

1

## INTRODUCTION

Beginning with its 1998 decision in *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998), this Court has embraced a rigid, bright-line rule for the exercise of personal jurisdiction in patent declaratory judgment actions. Specifically, the Court has held, based on "policy considerations unique to the patent context," *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1333 (Fed. Cir. 2008) (internal quotations omitted), that contacts created through unsuccessful attempts to license a patent can *never* be sufficient to create specific personal jurisdiction over a patent holder. In contrast to that rigid, patent-specific rule, the Supreme Court has repeatedly emphasized that the analysis of personal jurisdiction "is not susceptible of mechanical application," *Kulko v. Superior Court*, 436 U.S. 84, 92 (1978), and has instead required a case-by-case inquiry into the defendant's contacts with the forum state and considerations of "fair play and substantial justice," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485–86 (1985) (internal quotations omitted). Applying the analysis mandated by Supreme Court precedent, it is clear that personal jurisdiction exists in declaratory judgment actions, such as this one, where the patent holder purposefully targeted the forum state by sending demand letters into the state and engaging in in-person meetings in the state with the specific purpose of licensing the patents-in-suit.

2

In addition, important public policy interests support allowing courts to exercise personal jurisdiction over patentees who engage in patent licensing activities targeted at the forum state. The Supreme Court and Congress have consistently emphasized a strong public policy in clearing invalid patents from the marketplace. The Declaratory Judgment Act furthers this policy by allowing accused infringers to obtain a decision on patent validity at a reasonable time and in a reasonable place. The rigid rule established by *Red Wing Shoe*, however, frustrates the goal of encouraging patent challenges by granting patent holders unilateral control over where a declaratory judgment suit may be filed.

For these reasons, the Court should *sua sponte* consider this case *en banc* to overturn the restrictive jurisdictional rule established by *Red Wing Shoe*.

## ARGUMENT

### I. *Red Wing Shoe*'s Bright-Line Rule Conflicts with Controlling Supreme Court Precedent and Is Inconsistent with This Court's Own Case Law

Personal jurisdiction exists when a defendant has purposefully established minimum contacts with the forum state such that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In addition, the personal jurisdiction analysis is informed by considerations of "fair play and substantial justice." *Burger King*, 471 U.S. at 464. Once a defendant has been shown to possess sufficient minimum contacts, the burden shifts to that defendant, who must present a "compelling case" as to why

3

the exercise of personal jurisdiction is unreasonable. *Id*. at 477.  In making the highly fact-intensive inquiry into personal jurisdiction, "the facts of each case must be weighed to determine whether the requisite affiliating circumstances are present." *Kulko*, 436 U.S. at 92 (internal quotations omitted); *accord Burger King*, 471 U.S. at 485 ("[W]e . . . reject any talismanic jurisdictional formulas.").

In contrast to the case-specific inquiry mandated by the Supreme Court, this Court in *Red Wing Shoe* adopted a bright-line rule that fairness considerations *always* prohibit the exercise of personal jurisdiction based on cease-and-desist letters sent into the forum state. *See* 148 F.3d at 1360–61.  Relying on what the Court later characterized as "policy considerations unique to the patent context," *Avocent*, 552 F.3d at 1333, the Court reasoned that grounding personal jurisdiction on cease-and-desist letters would discourage settlement of disputed claims, thus failing to comport with principles of fairness, *Red Wing Shoe*, 148 F.3d at 1361.

Since *Red Wing Shoe*, this Court has consistently applied and expanded this inflexible rule.  In *Avocent*, for example, the Court made clear that "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum [state] . . . besides the letters threatening an infringement suit," 552 F.3d at 1334 (internal quotations omitted), and that these "other activities" must "relate to the enforcement or the defense of the validity of the relevant patents," *id.* (emphasis omitted).  Applying *Red Wing*

4

*Shoe*, and over the dissent of Judge Newman, the Court ignored the contacts created through multiple cease-and-desist letters and then held that the patent holder's sales of products in the forum state were also not sufficient to create jurisdiction over the patent owner in a declaratory judgment action. *Id.* at 1337. Most recently, in *Autogenomics, Inc., v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009), the Court, again over the dissent of Judge Newman, applied *Red Wing Shoe* and held there was no jurisdiction over a patent holder who had sent cease-and-desist letters into the forum state, engaged in licensing negotiations in the forum state, and entered license agreements concerning the patents-in-suit with numerous companies located in the forum state. *Id.* at 1014–15, 1019–21.

The bright-line rule embraced in *Red Wing Shoe*, *Avocent*, and *Autogenomics*—that contacts formed through cease-and-desist letters and unsuccessful licensing negotiations can *never* be sufficient to create personal jurisdiction—is plainly inconsistent with Supreme Court precedent. Although this Court correctly recognized that cease-and-desist letters and concomitant licensing efforts give rise to sufficient minimum contacts, *see Red Wing Shoe*, 148 F.3d at 1360, it deviated from Supreme Court precedent by adopting an inflexible rule that such contacts should never, in fairness, give rise to specific personal jurisdiction.

In *World-Wide Volkswagen*, the Supreme Court delineated five factors for courts to consider in evaluating whether the exercise of personal jurisdiction is fair:

(1) the burden on the defendant, (2) "the forum state's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) the states' shared interest "in furthering fundamental substantive social policies." 444 U.S. at 292. Under these factors, the defendant must make a "compelling case" that its particular burdens outweigh the other interests implicated in the case before the court. *See* Charles W. Rhodes, *Liberty, Substantive Due Process, and Personal Jurisdiction*, 82 Tul. L. Rev. 567, 640–41 (2007) (citing *Burger King*, 471 U.S. at 477). Such a showing is exceedingly rare.[2] Nowhere in *Red Wing Shoe* or its progeny, however, did this Court balance those factors under the particular circumstances presented. Instead, the Court effectively ignored the Supreme Court's mandated analysis in favor of a pro-settlement policy.

A proper application of the fairness factors illustrates that in certain cases— including the one currently before the Court—personal jurisdiction is proper when a defendant has sent a cease-and-desist letter or engaged in other licensing

---

[2] Only once has the Supreme Court held that fairness considerations precluded the exercise of personal jurisdiction. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 116 (1987) (rejecting jurisdiction in a dispute by a Taiwanese tire manufacturer against its Japanese supplier, noting that "the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State" made "the exercise of personal jurisdiction by a California court . . . unreasonable and unfair").

activities directed at the plaintiff within a forum. *See* Megan M. La Belle, *Patent Litigation, Personal Jurisdiction, and the Public Good*, 18 Geo. Mason L. Rev. 43, 90–97 (2010) (discussing how the fairness factors favor personal jurisdiction over certain patent holders who send cease-and-desist letters). Here, there is simply no evidence that it would be particularly burdensome for the patent owner, Papst, to defend this action in California. Indeed, representatives of Papst have previously traveled to California on several occasions to convince the plaintiffs-appellants to purchase licenses to the patents-in-suit. Moreover, California is a "convenient and effective" forum for the plaintiffs-appellants, who are headquartered there. *World-Wide Volkswagen*, 444 U.S. at 292. And California plainly has an interest in adjudicating a dispute involving allegations that California-based companies are committing patent infringement in California.

Indeed, it would be manifestly unfair *not* to exercise jurisdiction under these circumstances. Under *Red Wing Shoe*, patentees like Papst can use their patent rights as a sword—for example, by sending letters into California accusing the plaintiffs-appellants of infringement, meeting with the plaintiffs-appellants' agents in California, and extracting licensing revenue from California residents—but also be shielded from jurisdiction in California. In short, in declaratory judgment cases such as this one, the patent owner cannot make a "compelling case" that the exercise of jurisdiction would be unfair.

Furthermore, *Red Wing Shoe*'s narrow approach to specific personal jurisdiction in declaratory judgment actions is inconsistent with this Court's own case law. For instance, when patent holders initiate infringement suits, they have broad ability to hale accused infringers into federal court in practically any state. *See* Jeanne C. Fromer, *Patentography*, 85 N.Y.U. L. Rev. 1444, 1451 (2010); Kimberly A. Moore, *Forum Shopping in Patent Cases: Does Geographic Choice Affect Innovation?*, 79 N.C. L. Rev. 889, 920–22 (2001); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994) (finding personal jurisdiction over accused infringers who "purposefully shipped the accused [product] into [the forum state] through an established distribution channel").[3]

*Red Wing Shoe*'s bright-line rule is also inconsistent with the weight that this Court has given to licensing activity when assessing the presence of a domestic industry in patent cases before the International Trade Commission (ITC). In an action before the ITC, the complaint must establish the existence or imminent establishment of a domestic industry for the articles protected by the asserted

---

[3]  It should be noted that a recent petition for a writ of mandamus in *In re TC Heartland, LLC*, No. 16-105 (Fed. Cir. filed Oct. 23, 2015), has urged the Court to overrule its case law conferring sweeping power over forum selection on patent infringement plaintiffs. Although *amici* in this case take no position on the merits of the *TC Heartland* petition, the petition highlights the importance of forum-selection issues in modern patent law, including the question of personal jurisdiction raised by this declaratory judgment case.

patent. 19 U.S.C. § 1337(a)(2). The statute further provides that "an industry in the United States shall be considered to exist if there is in the United States, with respect to the articles . . . (c) substantial investment in its . . . licensing." 19 U.S.C. § 1337(a)(3). This Court has interpreted that language to allow the finding of a domestic industry when the only activity conducted by a patentee in the United States is licensing its patents. *See, e.g.*, *InterDigital Commc'ns, LLC v. ITC*, 690 F.3d 1318, 1329–30 (Fed. Cir. 2012). Yet, under *Red Wing Shoe*, that same licensing activity would not grant a federal court personal jurisdiction over the patent holder in a declaratory judgment action.

Finally, this case is an ideal vehicle for reconsidering the law of personal jurisdiction in declaratory judgment actions, as the district court's holding was based squarely on the bright-line rule of *Red Wing Shoe*. After cataloguing the patent holder's extensive contacts with California, the court wrote that those contacts were "either related solely to [the patent holder's] attempts to license the patents, which the Federal Circuit has held insufficient, or according to Federal Circuit law [we]re irrelevant to the parties' instant dispute." (Order Granting Def.'s Mot. to Dismiss at 23, N.D. Cal. ECF No. 57, Case No. 5:14-cv-04794-LHK, N.D. Cal. ECF No. 62, Case No. 5:14-cv-04963-LHK.) Moreover, panels and judges of this Court have expressed concern about the wisdom of *Red Wing Shoe* and its progeny. *See, e.g.*, *Avocent*, 552 F.3d at 1341 (Newman, J.,

9

dissenting) ("The entirety of the contacts with the forum . . . supports the exercise of personal jurisdiction . . . comporting with the principles of personal jurisdiction as elaborated by the Supreme Court."); *see also Autogenomics*, *Inc.*, 566 F.3d at 1021 ("Although we . . . are concerned that foreign patentees . . . may engage in significant commercialization and licensing efforts in a state . . . we are nonetheless bound by *Avocent*."); *id.* at 1028 (Newman, J., dissenting) ("The court's decision that [the patent holder] cannot be brought before the court . . . is contrary to law, precedent, and policy.").

## II.    Public Policy Supports the Exercise of Personal Jurisdiction Based on Licensing Efforts

Under a proper, case-by-case inquiry into personal jurisdiction, district courts would be permitted to hear declaratory judgment actions when the defendant has engaged in licensing efforts and activity directed at the forum state.  Not only does Supreme Court precedent mandate this result, public policy considerations also warrant it.

*First*, *Red Wing Shoe*'s bright-line rule defeats the core patent policy of encouraging challenges to patent validity.  The Supreme Court has "emphasized the importance to the public at large of resolving questions of patent invalidity." *Cardinal Chem. Co. v. Morton Int'l., Inc.*, 508 U.S. 83, 100 (1993) (internal citation omitted).  Accordingly, the Supreme Court has promulgated a "group of authorities [that] encourage authoritative testing of patent validity." *Blonder-*

10

*Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 344 (1971). In

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), for example, the Court

permitted an alleged infringer to file a declaratory judgment action even though the

alleged infringer continued to comply with a licensing agreement. And, in

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843 (2014), the

Court held that courts could not shift the burden of proof on the question of

infringement to the alleged infringer simply because the suit sought a declaratory

judgment.

Like the Supreme Court, Congress has, in recent years, acted to facilitate

quick and inexpensive challenges to patent validity. That was, in fact, a major

purpose of the recently enacted America Invents Act (AIA). *See* Joe Matal, *A*

*Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed.

Cir. B.J. 539, 599–601 (2011–2012). During deliberation on the AIA, the House

Judiciary Committee noted the "growing sense that questionable patents are too

easily obtained and are too difficult to challenge" and emphasized that a key

objective of the legislation was "providing a more efficient system for challenging

patents that should not have issued[] and reducing unwarranted litigation costs."

H.R. Rep. No. 112-98, at 39–40 (2011). Although the AIA created several new

administrative procedures to challenge patent validity, declaratory judgment

actions remain an important tool for accused infringers, particularly those who

11

have strong arguments on noninfringement—an issue the PTO is powerless to decide—or who have invalidity arguments that are beyond the scope of PTO review. *See, e.g.*, 35 U.S.C. § 311(b) (limiting *inter partes* review to novelty and nonobviousness).

There is, to be sure, a robust debate among scholars about whether the PTO issues too many "bad patents"—that is, patents that are overly broad or that represent only marginal improvements in the state of the art. *See* Paul R. Gugliuzza, *Patent Litigation Reform: The Courts, Congress, and the Federal Rules of Civil Procedure*, 95 B.U. L. Rev. 279, 279–80 (2015) (citing commentary). *Amici* differ amongst themselves as to the scope or even the existence of a "bad patents" problem and whether it should be a major cause of concern in patent policy. They are, however, united in their professional opinion that declaratory judgment actions serve an important patent-clearing function and that the lower court's decision in this case, based on *Red Wing Shoe* and its progeny, raises improper barriers to the declaratory judgment action's critical function in patent suits.

*Second*, the bright-line prohibition on personal jurisdiction adopted in *Red Wing Shoe* undermines the purpose of the Declaratory Judgment Act. Congress enacted the Declaratory Judgment Act to open federal courts to "parties confronted with uncertainties in their legal and business relations, but who had no resort to the

12

courts because the other party possessed the cause of action." Lisa A. Dolak,

*Declaratory Judgment Jurisdiction in Patent Cases: Restoring the Balance*

*Between the Patentee and the Accused Infringer*, 38 B.C. L. Rev. 903, 910 (1997).

The extensive hearings held on the Declaratory Judgment Act in the years leading

up to its enactment reveal that alleged patent infringers were among the

beneficiaries specifically contemplated. *See* Donald L. Doernberg & Michael B.

Mushlin, *The Trojan Horse: How the Declaratory Judgment Act Created a Cause*

*of Action and Expanded Federal Jurisdiction While the Supreme Court Wasn't*

*Looking*, 36 UCLA L. Rev. 529, 561–73 (1989) (providing a summary of the

fifteen-year legislative history). In particular, during hearings on an earlier version

of the Declaratory Judgment Act, Professor Edson R. Sunderland testified:

> I assert that I have a right to use a certain patent. You
> claim that you have a patent. What am I going to do
> about it? There is no way that I can litigate my right,
> which I claim, to use that device, except by going ahead
> and using it, and you [the patent holder] can sit back as
> long as you please and let me run up just as high a bill of
> damages as you wish to have me run up, and then you
> may sue me for the damages, and I am ruined, having
> acted all the time in good faith and on my best judgment,
> but having no way in the world to find out whether I had
> a right to use that device or not.

*Id.* at 564 (quoting *Hearings on H.R. 5623 Before a Subcomm. of the Senate*

*Comm. on the Judiciary*, 70th Cong., 1st Sess. 35 (1928)). Based on this history,

"Congress clearly contemplated . . . permit[ting] federal declaratory judgment actions by alleged patent infringers." *Id.* at 570.

Thus, the Declaratory Judgment Act "allow[s] potential infringers to 'clear the air' by seeking declaratory relief in federal court instead of waiting for the patent owner to file an infringement suit." Amelia Smith Rinehart, *Patent Cases and Public Controversies*, 89 Notre Dame L. Rev. 361, 367 (2013). In so doing, the Declaratory Judgment Act "gives the alleged infringer the additional benefit of choosing the forum and the time of the suit." Kimberly A. Moore, Timothy R. Holbrook & John F. Murphy, *Patent Litigation and Strategy* 52 (4th ed. 2013).

Unfortunately, the bright-line rule of *Red Wing Shoe* deprives accused infringers of one of the primary advantages of the declaratory judgment action—the ability to control the forum. Of course, an accused infringer should not be able to choose *any* federal court at will. But it should, consistent with the purpose of the Declaratory Judgment Act, be able to bring suit in a forum with which the patent holder has constitutionally sufficient minimum contacts.

*Third*, *Red Wing Shoe*'s bright-line rule improperly elevates the promotion of settlement over numerous other important policy considerations. *See* Megan M. La Belle, *Against Settlement of (Some) Patent Cases*, 67 Vand. L. Rev. 375, 429–30 (2014). As noted, the Court in *Red Wing Shoe* based its refusal of jurisdiction primarily on a perceived "policy favoring settlement" of patent infringement

14

claims.  148 F.3d at 1361.  Although pre-suit communications can sometimes promote settlement of patent disputes, that is not invariably true, as the Court assumed in *Red Wing Shoe*.  For instance, in recent years, some patent holders have used demand letters for the sole purpose of extracting nuisance-value licensing payments.  *See* Paul R. Gugliuzza, *Patent Trolls and Preemption*, 101 Va. L. Rev. 1579, 1581–82 (2015); Leah Chan Grinvald, *Policing the Cease-and-Desist Letter*, 49 U.S.F. L. Rev. 411, 423–24 (2015); Mark A. Lemley & A. Douglas Melamed, *Missing the Forest for the Trolls*, 113 Colum. L. Rev. 2117, 2126 (2013).  In this context, the "promotion of settlement" rationale of *Red Wing Shoe* has no application.

Moreover, recent Supreme Court precedent casts doubt on this Court's assumption that settlement of patent disputes is always in the public's interest.  *See F.T.C. v. Actavis, Inc.*, 133 S. Ct. 2223 (2013).  In *Actavis*, the Supreme Court rejected a bright-line rule (which this Court had embraced) that settlement payments within the scope of a patent were immune from antitrust scrutiny, instead holding that those settlements should be evaluated under the rule of reason.  *Id.* at 2237.  Despite a "general legal policy favoring the settlement of disputes," the Court ruled that settlements in the patent context demanded some scrutiny, emphasizing the "policy of eliminating unwarranted patent grants so the public will not continually be required to pay tribute to would-be monopolists without need or

15

justification." *Id*. at 2233–34 (internal citations omitted). Thus, while promotion of settlement no doubt remains a laudable goal in some contexts, *Red Wing Shoe* fails to balance that goal against other policy interests in the patent context, including clearing invalid patents.

## CONCLUSION

For the foregoing reasons, this Court should *sua sponte* consider this case *en banc* in order to abrogate *Red Wing Shoe* and its progeny. The Court should instead apply the case-specific analysis of personal jurisdiction mandated by Supreme Court precedent. Applying that precedent to the facts of this case, it is clear that personal jurisdiction exists because the patent holder purposefully targeted the forum state by sending demand letters into the state and engaging in in-person meetings in the state with the specific purpose of licensing the patents-in-suit.

Dated: December 21, 2015         SIMPSON THACHER & BARTLETT LLP

                            /s/ *Harrison J. Frahn IV*
                            Harrison J. Frahn IV
                            Matthew K. Telford
                            Simpson Thacher & Bartlett LLP
                            2475 Hanover Street
                            Palo Alto, California 94304
                            Telephone: (650) 251-5000

                            *Counsel for Amici Curiae*

# APPENDIX A

*Full List of Amici Curiae:*

Professor Debra Lyn Bassett
Southwestern Law School

Professor Anya Bernstein
SUNY Buffalo Law School

Professor Jeremy W. Bock
University of Memphis School of Law

Professor Patrick J. Borchers
Creighton University School of Law

Professor Michael J. Burstein
Cardozo School of Law

Professor Michael A. Carrier
Rutgers Law School

Professor Bernard Chao
University of Denver Sturm College of Law

Professor Colleen V. Chien
Santa Clara University School of Law

Professor Jorge L. Contreras
University of Utah S.J. Quinney College of Law

Professor Scott Dodson
UC Hastings College of the Law

Professor Joshua A. Douglas
University of Kentucky College of Law

Professor Catherine Ross Dunham
Elon University School of Law

Professor Katherine Florey
University of California Davis School of Law

Professor Roger Allan Ford
University of New Hampshire School of Law

Professor Leah Chan Grinvald
Suffolk University Law School

Professor Paul R. Gugliuzza
Boston University School of Law

Professor Timothy R. Holbrook
Emory University School of Law

Professor William Hubbard
University of Baltimore School of Law

Professor Sapna Kumar
University of Houston Law Center

Professor Megan M. La Belle
Catholic University of America, Columbus School of Law

Professor Mark A. Lemley
Stanford Law School

Professor David I. Levine
UC Hastings College of the Law

Professor Brian J. Love
Santa Clara University School of Law

Professor Joseph Scott Miller
University of Georgia School of Law

Professor Patricia W. Moore
St. Thomas University School of Law

Professor Ira Steven Nathenson
St. Thomas University School of Law

Professor Xuan-Thao Nguyen
Indiana University McKinney School of Law

Professor Philip A. Pucillo
Michigan State University College of Law

Professor Greg Reilly
California Western School of Law

Professor Charles W. Rhodes
South Texas College of Law

Professor Cassandra Burke Robertson
Case Western Reserve University School of Law

Professor Christopher B. Seaman
Washington and Lee University School of Law

Professor Gregory Sisk
University of St. Thomas School of Law (Minnesota)

Professor Howard M. Wasserman
Florida International University College of Law

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Fed. R. App. P.

29(d) and 32(a)(7)(B) because it contains 3,543 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has

been prepared in a proportionally spaced typeface using Microsoft Word in 14

point Times New Roman font.

Dated: December 21, 2015            /s/ *Harrison J. Frahn IV*
                                    Harrison J. Frahn IV
                                    Simpson Thacher & Bartlett LLP
                                    2475 Hanover Street
                                    Palo Alto, California 94304
                                    Telephone: (650) 251-5000

                                    *Counsel for Amici Curiae*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2015, I electronically filed the **BRIEF OF THIRTY-FOUR LAW PROFESSORS AS *AMICI CURIAE* IN SUPPORT OF APPELLANTS** using the Court's Case Management/Electronic Case Filing system, which will send a notification of such filing to all registered participants.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, within the time provided in the Court's rules.

Dated: December 21, 2015          /s/ *Harrison J. Frahn IV*
                                  Harrison J. Frahn IV
                                  Simpson Thacher & Bartlett LLP
                                  2475 Hanover Street
                                  Palo Alto, California 94304
                                  Telephone: (650) 251-5000

                                  *Counsel for Amici Curiae*